UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MITCHELL STERN,

                    Plaintiff,                                COMPLAINT

                    -against-

THE CITY OF NEW YORK, P.O. GEORGE        JURY TRIAL
SHAMMAS, Shield No. 2781, P.O. CASTILLO,    DEMANDED
DEPUTY SHERRIFF SERGIO BOCANUMENTH,
DEPUTY SHERRIF DENISE STENTON, "JOHN
DOEs" #1-10, (the name John Doe being
fictitious, as the true names are presently           ECF CASE
unknown) Individually and in their Official
Capacities,

                  Defendants.
------------------------------------------------------------X

        Plaintiff MITCHELL STERN ("Stern" or "plaintiff"), by his attorneys, Harris,

O'Brien, St. Laurent & Houghteling, LLP, complaining of defendants, respectfully

alleges as follows:

## PRELIMINARY STATEMENT

        1.     Plaintiff brings this action for compensatory damages, punitive damages,

and attorneys fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of

his civil rights as said rights are secured by those statutes and the United States

Constitution.

## JURISDICTION

        2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988

and the Fourth and Fourteenth Amendments to the United States Constitution.

3.      Jurisdiction for Stern's claims is founded upon 28 U.S.C. §§ 1331 and

1343.

## VENUE

4.      Venue is properly laid in the Eastern District of New York under U.S.C. §

1391(b), in that this is the District in which plaintiff's claim arose.

## JURY DEMAND

5.       Plaintiff respectfully demands a trial by jury of all issues in this matter

pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.      Plaintiff Mitchell Stern is and has been at all relevant times a resident of

the City of New York. He served for 26 years in the New York City Emergency Medical

Services both before and after its merger with the New York City Fire Department. His

last position with the department was as the Commanding Officer of the EMS Dispatch

Center. He retired at the rank of Captain on partial disability as a result of a compressed

cervical spine and other injuries he suffered while he was working on September 11,

2001. As a result of this injury, at the time of the incident in question, Stern had metal

plates, rods and screws in his neck and significantly decreased musculature around his

neck and spine and increased susceptibility to infection. In a distinguished career, he won

numerous awards and citations. He is a husband and a father of three children.

7.      Defendant the City of New York was and is a municipal corporation duly

organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant the City of New York maintains the New York City Police

Department, a duly authorized public authority and police department, authorized to

perform all functions of a police department, acting under the direction and supervision of defendant the City of New York.

9.      Defendant the City of New York maintains the New York City Sheriff's Office, a duly authorized public authority, exercising civil law enforcement powers under the authority of the New York City Department of Finance and under the direction and supervision of defendant the City of New York.

10.     At all relevant times, defendants P.O. George Shammas, P.O. Castillo, and P.O.s John Doe #1-9 were duly sworn police officers of the New York Police Department and were acting under the supervision of said department and according to their official duties.

11.     At all relevant times, defendants Deputy Sheriff Bocanumenth and Deputy Sheriff Stenton were duly sworn peace officers appointed as Deputy Sheriffs of the New York City Sheriff's Office.

12.     At all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State or City of New York.

13.     Each of the said acts of the defendants alleged herein were done by said defendants as employees of or in furtherance of their employment by the City of New York.

## FACTS

14.    On the morning of December 16, 2009, Stern was present at his home at 337 Finley Avenue, Staten Island. That morning Stern observed a New York City Sherriff's vehicle outside of his house and two deputy sheriffs approaching one of his vehicles, a 1989 Ford Probe, with the apparent intention of towing the vehicle.

15.    When the deputy sheriffs began the process of examining the Ford Probe, Stern exited his house and asked to speak to them.  When they indicated that they were willing to listen to him, Stern explained that it was improper to tow this vehicle because there were no outstanding unpaid tickets on this vehicle and because, even if there were, Stern was exempt from having his vehicle towed because of his disability. Stern also offered records showing that the unpaid tickets on another vehicle that provided the purported basis for the tow were in fact being appealed. Stern asked, in the alternative, if he could have use of the vehicle to take his disabled son to school and then surrender it to the deputy sheriffs.

16.    When the deputy sheriffs indicated that they would tow the vehicle regardless of Stern's objections and connected the tow truck to the car, Stern asked if the deputy sheriffs or one of them would contact a supervisor so that he could discuss his concerns with that supervisor.

17.    The deputy sheriffs did not call a supervisor but instead, upon information and belief, called the New York City Police Department.  After this call, but before police arrived, Stern asked for and was granted permission to retrieve the registration and

insurance card from the Ford Probe.  Stern retrieved the items and the deputy sheriffs

removed the vehicle from 337 Finley Avenue and took it to the end of the block.

18.      Shortly after the deputy sheriffs had removed the Ford Probe, police

officers George Shammas and Castillo from the 122nd Precinct arrived at the scene. Stern

approached and, referencing his twenty plus years of service with the Emergency

Medical Service as well as his prior rank as captain, requested their assistance in

negotiating a resolution with the deputy sheriffs that would at least allow Stern to take his

son to school.

19.      This request was met with immediate and unprovoked hostility by P.O.

Shammas  Shammas asked one of the deputy sheriffs if Stern was the "guy." Shammas

then said to Stern "fuck EMS" and "fuck FDNY" and "you're not my captain." Stern said

to Shammas that his language was inappropriate and wrote down his name and badge

number.  A conversation ensued during which Shammas asked Stern who he knew in the

department. Stern said he knew Joseph Esposito, then and now the Chief of Department

at NYPD, because Stern's father had worked as a landscaper for Esposito. At that point,

the confrontation appeared to be over.

20.      Stern then went up the stairs intending to return to his house so that he

could take his daughter to the school bus that had arrived at the end of the block. At that

time, P.O. Shammas and P.O. Castillo as well as the deputy sheriffs were returning to

their vehicles.

21.      At that moment, however, P.O. Shammas stated in a loud voice that he

needed to arrest Stern in order to protect himself.  At that point, P.O. Shammas and

Castillo, as well as one or more of the deputy sheriffs charged Stern and tackled him at

the top of the stairs, smashing his face into a wall and causing him fall through the handrail, destroying it, and resulting in Stern falling and hitting the ground under a pile of bodies.

22.    Stern was subsequently handcuffed and transported to a police precinct for processing. He was then arraigned before a New York City Criminal Court judge on misdemeanor charges of obstruction of governmental administration and resisting arrest. He was released on recognizance at arraignment.  The case continued for several months before the Staten Island District Attorney's Office and Stern agreed to adjourn the case in contemplation of dismissal.  The criminal case against Stern was subsequently dismissed and sealed.

23.    The police had no reason to arrest Stern at the time that they did. At no time had Stern committed a crime in their presence prior to arrest. Moreover, even if they had reason to arrest Stern, they had no basis to use the amount of force that they did. There was, for example, no reason to believe that Stern was a flight risk or posed any danger to the officers. Moreover, it was and should have been readily apparent to the officers that tackling Stern and causing him to fall down a flight of stairs was unnecessary to effect an arrest of him and created a significant and unnecessary risk that Stern would be injured.

24.    The fall destroyed the handrail to Stern's house and also resulted in serious injuries to Stern. The fusion of his cervical spine was dislodged and rotator cuffs in both shoulders were torn, either in the fall or in the subsequent actions taken by police officers in handcuffing Stern.  Following this incident, Stern was diagnosed with central cord syndrome. The central cord syndrome has created a continuing medical problem for

Stern resulting in numerous falls, one of which caused two fractured ankles and a two month hospital stay.

25.    At no time did Stern resist arrest or take any action that impaired the lawful actions of any government agent.

26.    As a result of the foregoing, Stern was seriously injured, resulting in pain, loss of mobility, loss of sensation, and loss of employment opportunities.  Specifically, because of his injuries, Stern was unable to accept employment with the National Guard that he was scheduled to start in 2010.

27.    As a result of the foregoing, Stern sustained, *inter alia*, loss of liberty, mental anguish, shock, fright, apprehension, embarrassment, stress, physical injury causing serious and continuing pain and disability, loss of employment opportunities, and deprivation of his constitutional rights.

28.    This lawsuit follows.

## FIRST CLAIM FOR RELIEF

## FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C. § 1983

29.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "28" with the same force and effect as if fully set forth herein.

30.    As a result of the aforesaid conduct by defendants, plaintiff was subjected to illegal, improper and false arrest by the defendants, taken into custody, and caused to be falsely imprisoned, detained and confined, in the absence of any probable cause or consent. These actions were taken by defendants under color of state law and in violation of plaintiff's rights under the United States Constitution.

31.     Defendants intended to seize and to confine the plaintiff unlawfully; defendants did unlawfully seize and subsequently confine defendant for an extended period of time; plaintiff was aware of his seizure and subsequent confinement; plaintiff did not consent to such seizure or such confinement; and the seizure and subsequent confinement of plaintiff was unjustified.

32.     As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, he was put in fear for his safety, he was humiliated and subjected to handcuffing and other physical restraints without probable cause, and he suffered loss of employment opportunities and injury to his reputation.

## SECOND CLAIM FOR RELIEF

### EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

33.      Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "32" with the same force and effect as if fully set forth herein.

34.     Aforementioned individual defendants attacked Stern in a manner that resulted in serious injury to him.

35.     Aforementioned individual defendants did so without justification, as there was no basis to arrest Stern and accordingly no need to use physical force against him at all and was accordingly the use of physical force was objectively unreasonable.

36.     In addition and in the alternative, to the extent that aforementioned individual defendants did or could have had probable cause to arrest Stern, the manner in which they affected his arrest involved an unjustified risk of causing injury to him and was objectively unreasonable.

37.     Aforementioned individual defendants were acting under the color of state law at the time of the incident giving rise to the injuries claimed herein. These actions were in violation of Stern's rights under the United States Constitution, including the Fourth and Fourteenth Amendments thereof.

38.     As a result of the foregoing, plaintiff suffered serious and lasting pain and disability and lost opportunities to obtain employment.

<u>THIRD CLAIM FOR RELIEF</u>

<u>MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983</u>

39.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "38" with the same force and effect as if fully set forth herein.

40.     All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

41.     All of the aforementioned acts deprived plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution and are in violation of 42 U.S.C. § 1983.

42.     The acts complained were carried out by the aforementioned individual defendants in their capacities as credentialed law enforcement officers with all the actual and/or apparent authority attendant thereto.

43.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as peace officers, pursuant to the customs, usages, practices, procedures and rules of the City of New York, the New York City Police Department and

the New York City Sheriff's Office, all under the supervision of ranking officers of said department, which include the following practices:

    i.   A policy encouraging arrests of persons in the absence of probable cause; and

    ii.   A policy under-emphasizing the avoidance of injury to arrestees.

44.    Defendants, collectively and individually, while acting under color of state law, engaged in such conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

45.    As a result of the actions taken by the individual defendants pursuant to the customs, usages, practices, procedures or rules of the respective municipality/authority, the plaintiff was deprived of his constitutional rights and suffered injuries flowing therefrom, including his seizure and ensuing forcible detention, serious physical injuries and loss of employment opportunities, and the other injuries described above.

**WHEREFORE**, plaintiff Mitchell Stern demands judgment in the amount of $1,000,000 in compensatory damages and an amount not less than $1,000,000 in punitive damages, plus attorneys fees, costs, and disbursements of this action.

DATED:        New York, New York
              October 17, 2012

                                        Respectfully submitted:

                                        _____
                                        Andrew St. Laurent
                                        Attorneys for Plaintiff Mitchell Stern
                                        HARRIS, O'BRIEN, ST. LAURENT
                                        & HOUGHTELING LLP
                                        111 Broadway, Suite 402
                                        New York, New York 10006
                                        (646) 248-6010
                                        andrew@harrislawny.com