UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MITCHELL STERN,

        Plaintiff,

        -against-

THE CITY OF NEW YORK, P.O. GEORGE
SHAMMAS, Shield No. 2781, P.O. DANIEL
CASTILLO,   DEPUTY SHERRIFF SERGIO
BOCANUMENTH, DEPUTY SHERRIF
DENISE SHENTON,
Individually and in their Official
Capacities,

        Defendants.
------------------------------------------------------------X

FIRST AMENDED
COMPLAINT

JURY TRIAL
DEMANDED

12-CV-5210-NGG-RER
ECF CASE

        Plaintiff MITCHELL STERN ("Stern" or "plaintiff"), by his attorneys, Harris, O'Brien, St. Laurent & Chaudhry LLP, complaining of defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

        1.     Plaintiff brings this action for compensatory damages, punitive damages, and attorneys fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights as said rights are secured by those statutes and the United States Constitution.

## JURISDICTION

        2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

        3.     Jurisdiction for Stern's claims is founded upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

4. Venue is properly laid in the Eastern District of New York under U.S.C. § 1391(b), in that this is the District in which plaintiff's claims arose.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff Mitchell Stern is and has been at all relevant times a resident of the City of New York. He served for 26 years in the New York City Emergency Medical Services both before and after its merger with the New York City Fire Department. His last position with the department was as the Commanding Officer of the EMS Dispatch Center. In a distinguished career, he won numerous awards and citations. He is a husband and a father of three children.

7. Stern retired at the rank of Captain on disability as a result of injuries he suffered on the job on January 14, 2000.

8. Following this injury, surgery was performed on Stern to achieve a C5/6 and C6/7 cervical fusion in December 2000. Stern suffered further injuries to his neck in the course of his response to the emergency of September 11, 2001. Stern subsequently underwent a posterior fixation and fusion in the same area of his cervical spine in July 2002. While he suffered meaningful complications following this surgery, Stern had recovered much of his physical function by 2005.

9. Defendant the City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

10. Defendant the City of New York maintains the New York City Police Department, a duly authorized public authority and police department, authorized to perform all functions of a police department, acting under the direction and supervision of defendant the City of New York.

11. Defendant the City of New York maintains the New York City Sheriff's Office, a duly authorized public authority, exercising civil law enforcement powers under the authority of the New York City Department of Finance and under the direction and supervision of defendant the City of New York.

12. At all relevant times, defendants George Shammas and Daniel Castillo were duly sworn police officers of the New York Police Department and were acting under the supervision of said department and according to their official duties.

13. At all relevant times, defendants Deputy Sheriff Bocanumenth and Deputy Sheriff Shenton were duly sworn peace officers appointed as Deputy Sheriffs of the New York City Sheriff's Office.

14. At all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State or City of New York.

15. Each of the said acts of the defendants alleged herein were done by said defendants as employees of or in furtherance of their employment by the City of New York.

## FACTS

16. On the morning of December 16, 2009, Stern was present at his home at 337 Finley Avenue, Staten Island. Early that morning, Stern observed a New York City Sherriff's vehicle outside of his house and two deputy sheriffs approaching one of his vehicles, a 1989 Ford Probe, with the apparent intention of initiating a tow of the vehicle.

17. When the deputy sheriffs began the process of examining the Ford Probe, Stern exited his house and asked to speak to one of them. When that officer indicated that he was willing to listen to Stern, Stern explained that it was improper to tow this vehicle because there were no outstanding unpaid tickets on this vehicle. Stern also offered records showing that the unpaid tickets on another vehicle that provided the purported basis for the tow were in fact being appealed. Stern asked, in the alternative, if he could have use of the vehicle to take his autistic son to school and then surrender it to the deputy sheriffs. During this time a tow truck arrived to tow the vehicle.

18. Around the same time, Stern asked for and was granted permission to retrieve the registration and insurance card from the Ford Probe. Stern also took photographs of the car after it was placed on the tow. When the deputy sheriffs indicated that they would tow the vehicle regardless of Stern's objections and connected the tow truck to the car, Stern asked Deputy Sheriff Sergio Bocanumenth if he would contact a supervisor so that Stern could discuss his request with that supervisor. During the course of this discussion, the tow truck removed the car from its location in front of Stern's house and towed it to the end of the block.

19. Bocanumenth did not call a supervisor but instead, upon information and belief, called the New York City Police Department.

20. Shortly after the tow truck had removed the Ford Probe, police officers George Shammas and Castillo from the 122nd Precinct arrived at the scene. Stern approached and, referencing his twenty plus years of service with the Emergency Medical Service as well as his prior rank as captain, requested their assistance in negotiating a resolution with the deputy sheriffs that would at least allow Stern to take his son to school.

21. This request was met with immediate and unprovoked hostility by Shammas. Shammas asked one of the deputy sheriffs if Stern was the "guy." Shammas then said to Stern "fuck EMS" and "fuck FDNY" and "you're not my captain." Stern said to Shammas that his language was inappropriate and wrote down his name and badge number. A conversation ensued during which Shammas asked Stern who he knew in the department. Stern said he knew Joseph Esposito, then and now the Chief of Department at NYPD, because Stern's father had worked as a landscaper for Esposito. At that point, the confrontation appeared to be over.

22. Stern then went up the stairs intending to return to his house so that he could take his daughter to the school bus that had arrived at the end of the block. At that time, Shammas and Castillo as well as the deputy sheriffs were returning to their vehicles.

23. Then Shammas stated in a loud voice that he needed to arrest Stern in order to protect himself and almost immediately thereafter Stern felt Shammas jump on his back. Shammas pinned Stern against the front wall of his house. Shammas punched, kicked and choked Stern, with assistance from Castillo and Bocanumenth. Stern was

5

forced into an awkward half-standing, half-crouching position with Shammas's weight pressing on his neck.

24. Despite Stern's repeated protestations about his injuries to his neck and shoulders, the officers continued to put tremendous stress and pressure on Stern's shoulders, upper back and neck in the process of restraining and handcuffing him.

25. Rather than intervening in an effort to protect Stern from Shammas's unjustified arrest of Stern or Shammas's use of excessive force against Stern, the other officers, viz., Castillo, Bocanumenth and Shenton assisted and attempted to assist Shammas in making the unjustified arrest and using excessive force, aiding and abetting Shammas in doing so.

26. On the way from the stoop of his house to the patrol car, Shammas caused additional pain and injury to Stern by forcing his rear-cuffed hands up in the air so Stern was bent over from the stoop to Shammas's patrol car.

27. Stern was then transported to a police precinct for processing. He was arraigned before a New York City Criminal Court judge on misdemeanor charges of obstruction of governmental administration and resisting arrest. He was released on recognizance at arraignment. The case continued for several months before the Staten Island District Attorney's Office and Stern agreed to adjourn the case in contemplation of dismissal. The criminal case against Stern was subsequently dismissed and sealed.

28. The police had no reason to arrest Stern at the time that they did. At no time had Stern committed a crime in their presence prior to arrest. Moreover, even if they had reason to arrest Stern, they had no basis to use the amount of force that they did. There was, for example, no reason to believe that Stern was a flight risk or posed any

6

danger to the officers. Moreover, it was and should have been readily apparent to the officers that the amount and type of force used against Stern was unnecessary to effect the arrest and was virtually certain to cause injury to him, particularly to a person with Stern's medical history, of which Stern informed the officers during their use of force against him.

29. Stern suffered serious injury as a result of the actions of the defendants. The fusion of his cervical spine was dislodged and rotator cuffs in both shoulders were torn, either in the fall or in the subsequent actions taken by police officers in handcuffing Stern. Following this incident, Stern was diagnosed with central cord syndrome. The central cord syndrome has created continuing medical problems for Stern resulting in numerous falls, one of which caused two fractured ankles and a lengthy hospital stay. Stern suffered debilitating pain, headaches, weakness and loss of motion, post-traumatic stress disorder, as a result of the wrongful conduct of the defendants.

30. In February 2012, Stern underwent surgery, including a C4 corpectomy, decompression and fusion stabilization to address this problem. While the surgery was successful in part, Stern continues to suffer continuing problems as a result of defendants' actions, including weakness in his arms and limited range of motion in his shoulders and pain.

31. At no time did Stern resist arrest or take any action that impaired the lawful actions of any government agent.

32. As a result of the foregoing, Stern was seriously injured, resulting in pain, loss of mobility, loss of sensation, and loss of employment opportunities. Specifically,

because of his injuries, Stern was unable to accept employment with the National Guard that he was scheduled to start in 2010.

33. As a result of the foregoing, Stern sustained, *inter alia*, loss of liberty, mental anguish, shock, fright, apprehension, embarrassment, stress, physical injury causing serious and continuing pain and disability, loss of employment opportunities, and deprivation of his constitutional rights.

Shammas Had Prior Encounters With Civilians That Gave Defendant City of New York Notice That He Should Not Have Been Employed As An Active Duty Police Officer

34. █████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
██

35. █████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████

36. █████████████████████████████████████
█████████████████████████████████████████

37. █████████████████████████████████████
█████████████████████████████████████████



41. All of this was foreseeable to the New York Police Department and the City of New York.

42. 

43. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

44. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

45. This lawsuit follows.

## FIRST CLAIM FOR RELIEF

## FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 U.S.C. § 1983

46. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "45" with the same force and effect as if fully set forth herein.

47. As a result of the aforesaid conduct by defendants, plaintiff was subjected to illegal, improper and false arrest by the defendants, taken into custody, and caused to be falsely imprisoned, detained and confined, in the absence of any probable cause or

consent. These actions were taken by defendants under color of state law and in violation of plaintiff's rights under the United States Constitution.

48.     Defendants intended to seize and to confine the plaintiff unlawfully; defendants did unlawfully seize and subsequently confine defendant for an extended period of time; plaintiff was aware of his seizure and subsequent confinement; plaintiff did not consent to such seizure or such confinement; and the seizure and subsequent confinement of plaintiff was unjustified.

49.     As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, he was put in fear for his safety, he was humiliated and subjected to handcuffing and other physical restraints without probable cause, and he suffered loss of employment opportunities and injury to his reputation. In addition, as a result of the unlawful arrest and imprisonment, plaintiff suffered the physical, psychological and other injuries described above.

## SECOND CLAIM FOR RELIEF

## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

50.      Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "49" with the same force and effect as if fully set forth herein.

51.     Aforementioned individual defendants attacked Stern in a manner that resulted in serious injury to him.

52.     Aforementioned individual defendants did so without justification, as there was no basis to arrest Stern and accordingly no need to use physical force against him at all and was accordingly the use of physical force was objectively unreasonable.

53. In addition and in the alternative, to the extent that aforementioned individual defendants did or could have had probable cause to arrest Stern, the manner in which they affected his arrest involved an unjustified risk of causing injury to him and was objectively unreasonable.

54. Aforementioned individual defendants were acting under the color of state law at the time of the incident giving rise to the injuries claimed herein. These actions were in violation of Stern's rights under the United States Constitution, including the Fourth and Fourteenth Amendments thereof.

55. As a result of the foregoing, plaintiff suffered serious and lasting pain and disability and lost opportunities to obtain employment.

## THIRD CLAIM FOR RELIEF

## MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

56. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs numbered "1" through "54" with the same force and effect as if fully set forth herein.

57. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

58. All of the aforementioned acts deprived plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution and are in violation of 42 U.S.C. § 1983.

59. The acts complained were carried out by the aforementioned individual defendants in their capacities as credentialed law enforcement officers with all the actual and/or apparent authority attendant thereto.

60. Defendant City of New York is responsible for the injuries suffered by plaintiff Stern under theories of negligent hiring, negligent supervision, negligent retention, and failure to discipline. Because the decisions not to supervise, to retain on active duty and not to discipline Shammas were made by the head of the New York Police Department, Ray Kelly, or his designee, the City of New York is directly liable for them.

61. Those decisions by the head of the New York Police Department, Ray Kelly, or his designee, to maintain Shammas, a person clearly lacking the character and integrity to serve as a police officer, which should have been readily apparent to Kelly or his designee not later than July 31, 2009, was negligent, grossly negligent or reckless and was in any made in gross disregard of the safety of the public. Knowing that Shammas had engaged in such dishonest, menacing and threatening conduct to civilians, it was or should have been readily apparent to Kelly or his designee that Shammas was unfit to serve as an active duty to police officer and the injuries to Stern (or a person like him) were readily foreseeable.

62. As a result of the decisions taken by municipal defendant, the plaintiff was deprived of his constitutional rights and suffered injuries flowing therefrom, including his seizure and ensuing forcible detention, serious physical injuries and loss of employment opportunities, and the other injuries described above.

**WHEREFORE**, plaintiff Mitchell Stern demands compensatory damages and punitive damages in amounts to be determined at trial, plus attorneys fees, costs, and disbursements of this action.

DATED:   New York, New York
         March 20, 2014

                                    Respectfully submitted:

                                    _____
                                    Andrew St. Laurent
                                    Attorneys for Plaintiff Mitchell Stern
                                    HARRIS, O'BRIEN, ST. LAURENT
                                    & CHAUDHRY LLP
                                    111 Broadway, Suite 1502
                                    New York, New York 10006
                                    (646) 248-6010
                                    andrew@harrisobrien.com