UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MITCHELL STERN,

                            Plaintiff,

            -against-

THE CITY OF NEW YORK, P.O. GEORGE
SHAMMAS, Shield No. 2781, P.O. DANIEL
CASTILLO, DEPUTY SHERIFF SERGIO
BOCANUMENTH, DEPUTY SHERIFF
DENISE SHENTON, Individually and in their
Official Capacities,

                            Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-5210 (NGG) (RER)**

**PUBLIC VERSION
(REDACTED)**

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Defendants' partial motion to dismiss Plaintiff's First Amended Complaint (the "FAC") pursuant to Federal Rule of Civil Procedure 12(c). (Not. of Mot. to Dismiss (Dkt. 57).) Plaintiff Mitchell Stern brings this Section 1983 action against Defendant the City of New York ("the City") and four individual police officers (the "Individual Defendants"), alleging that the officers used excessive force in falsely arresting and imprisoning him during an incident that occurred on December 16, 2009. (FAC (Dkts. 42-43[1]).). Plaintiff further contends that the City is responsible for his injuries due to its decision inadequately to discipline one of the Individual Defendants, Police Officer George Shammas, for prior conduct. (Id. ¶¶ 56-62.) Defendants move to dismiss the claims against the City on the grounds that Plaintiff has failed adequately to state a claim for municipal liability. (Not. of Mot. to Dismiss.)

For the reasons set forth below, the motion is DENIED.

---

[1] The FAC was filed under seal, as it contains information regarding Defendant Police Officer George Shammas's disciplinary history. A redacted version is filed at Dkt. 43.

# I. BACKGROUND

## A. Factual Background

For the purposes of contemplating Defendants' motion to dismiss, the court accepts as true the following facts alleged in Plaintiff's FAC. Only certain of the facts alleged by Plaintiff in the FAC are recounted below.

### 1. The December 16, 2009, Incident

Plaintiff's claims arise out of an incident that occurred on the morning of December 16, 2009, at Plaintiff's home in Staten Island, New York. (FAC ¶ 16.) Plaintiff alleges that two deputy sheriffs arrived at his home and began to tow his vehicle. (Id.) Plaintiff objected to the towing, and asked the deputy sheriffs to call their supervisor so that Plaintiff could discuss his objection. (Id. ¶¶ 17-18.) Plaintiff also requested permission to use his vehicle to drive his autistic son to school, and then surrender it to the deputy sheriffs. (Id. ¶ 17.) Plaintiff alleges upon information and belief that the deputy sheriffs then called the New York City Police Department ("NYPD"), rather than their supervisor. (Id. ¶ 19.)

Shortly after the tow truck removed Plaintiff's vehicle from in front of his home, Defendants Shammas and Police Officer Daniel Castillo arrived at the scene. (Id. ¶ 20.) Plaintiff approached Shammas and Castillo and, referencing his twenty plus years of service with the Emergency Medical Service, requested their assistance in negotiating a resolution that would at least allow Plaintiff to drive his son to school that day. (Id. ¶ 20.) Shammas responded with expletives and hostility, stating, for example, "fuck EMS." (Id. ¶ 21.) Plaintiff stated that Shammas's conduct was inappropriate and wrote down his name and badge number. (Id.) When the verbal confrontation appeared to be over, Plaintiff proceeded up the stairs toward his house, while Shammas and Castillo began to return to their vehicle. (Id. ¶¶ 21-22.) However,

Shammas then stated loudly that he needed to arrest Plaintiff "in order to protect himself." (Id. ¶ 23.) Shammas jumped on Plaintiff's back, pinning him against the front wall of his house. (Id.) Shammas punched, kicked, and choked Plaintiff, with the assistance of Castillo and the two deputy sheriffs, who were still at the scene. (Id.) The officers handcuffed Plaintiff and transported him to a police precinct for processing; he was then arraigned on misdemeanor charges of obstruction of governmental administration and resisting arrest, and released on his own recognizance. (Id. ¶ 27.) The criminal case against Plaintiff was later dismissed and sealed. (Id.)

2. Shammas's Prior Conduct and Plaintiff's Allegations Against the City



3



### B. Procedural Background

Plaintiff filed this action on October 17, 2012. (Compl. (Dkt. 1).) The City filed an Answer on January 15, 2013 (Dkt. 11), Defendants Deupty Sheriff Sergio Bocanumenth and Deputy Sheriff Denise Stenton filed an Answer on March 15, 2013 (Dkt. 17), and Shammas and Castillo filed an Answer on April 2, 2013 (Dkt. 21). During a court conference held on October 31, 2013, the court granted Plaintiff leave to amend his pleading following the close of limited discovery. (Nov. 1, 2013, Min. Entry.) Plaintiff filed the FAC on April 3, 2014. (Dkts. 42-43.) Defendants did not answer the FAC. Instead, on July 10, 2014, all Defendants filed their fully briefed partial motion to dismiss the FAC. (Dkts. 57-61, 63-64.)

## II. LEGAL STANDARD

### A. Rule 12(c) Motion to Dismiss

As an initial matter, the parties dispute the proper vehicle for Defendants' motion. Defendants' notice of motion and memoranda of law cite Federal Rule of Civil Procedure 12(c), but Plaintiff correctly notes that Rule 12(c) is not available, since Defendants have yet to answer the FAC, which was filed with leave of the court and is the operative complaint in this action. (Mem. of Law in Opp'n to Mot. to Dismiss ("Pl. Mem.") (Dkts. 60, 63) at 1 n.1.)

Nevertheless, Plaintiff has consented to treating Defendants' motion to dismiss as one made pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Id.) The same legal standard applies to a Rule 12(b)(6) motion as a Rule 12(c) motion. Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999))). Accordingly, the court will treat the motion to dismiss as one brought under Rule 12(b)(6). See, e.g., Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 653 (S.D.N.Y. 2006) (treating Rule 12(c) motion to dismiss an amended complaint as a Rule 12(b)(6) motion to dismiss, since no answer to the amended complaint had been filed).

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007). In reviewing the complaint, the court accepts as true all allegations of fact, and draws all reasonable inferences from these allegations in favor of the plaintiff. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). A complaint survives a

motion to dismiss if it contains "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 555).

### B.   Monell Liability

A municipality cannot be held liable pursuant to 42 U.S.C. § 1983 under a theory of respondeat superior. Monell v. Dep't of Social Servs. of New York, 436 U.S. 658, 692 (1978). However, under Monell, a municipality may be held liable for the constitutional violations of its employees when such violations result from the municipality's official policy. Id. at 693. Such a policy may be (1) an express policy, (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,'" City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 168 (1970)), or (3) a decision by a person with "final policy making authority," see City of St. Louis, 485 U.S. at 112; Pembaur v. City of Cincinnati, 475 U.S. 469 (1986). Here, Plaintiff focuses on the third category.

A decision by a municipal policymaker on even "a single occasion" may expose the municipality to Section 1983 liability. Pembaur 475 U.S. at 471; see also Amnesty Am. v. Town

of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004) ("[A] single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability."). Where, as here, a plaintiff alleges that a subordinate municipal employee committed a constitutional violation, "municipal liability turns on the plaintiff['s] ability to attribute the subordinate['s] conduct to the actions or omissions of higher ranking officials with policymaking authority." Amnesty Am., 361 F.3d at 126. One method of implicating the higher ranking official "is to show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." Id.; see also City of Canton v. Harris, 489 U.S. 378, 396 (1989) (O'Connor, J., concurring in part and dissenting in part) ("Where a Section 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of Monell are satisfied.").

Among the types of municipal policies and customs that can give rise to Monell liability is the failure to monitor or supervise employees. See, e.g., Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995). In these cases, "[a] Section 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the possible [constitutional violation], exhibited deliberate indifference." Id. at 1049. "To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious." Id. "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." Id. The Supreme Court has cautioned, however, that deliberate indifference "is a stringent standard of fault." Connick v.

Thompson, 131 S. Ct. 1350, 1360 (2011) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997)). "The operative inquiry is whether the facts suggest that the policymaker's inaction was the result of a 'conscious choice' rather than mere negligence." Amnesty Am., 361 F.3d at 128.

A plaintiff bringing a Monell claim also must establish a causal connection between the municipality's official policy and the constitutional violation. See Cash v. Cnty. of Erie, 654 F.3d 324, 340 (2d Cir. 2011) (describing causation element for Monell claims in terms of "proximate causation"); Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008) (describing causation element as requiring a showing that municipality was the "moving force" behind the injury (quoting Bryan Cnty., 520 U.S. at 404)); see also City of Canton v. Harris, 489 U.S. 378, 385 (1989) (examining "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation"). A plaintiff may prove the causation element by showing "that while the policymaker himself engaged in 'facially lawful . . . action,' he indirectly caused the misconduct of a subordinate municipal employee." Jeffes v. Barnes, 208 F.3d 49, 61 (2d Cir. 2000) (quoting Bryan Cnty., 520 U.S. at 405-07). If adequately alleged, causation is a question of fact for the jury. Id.

## III. DISCUSSION

Defendants argue that Plaintiff has failed adequately to allege (1) the existence of a municipal policy and (2) that the policy caused the underlying constitutional violations alleged by Plaintiff. For the reasons discussed below, neither argument is meritorious at this stage in the proceeding.[2]

---

[2] The City also argues that to the extent Plaintiff asserts negligence-based claims, they are barred by his failure to comply with conditions precedent to filing suit. (Mem. of Law in Supp. of Mot. to Dismiss ("Defs. Mem.") (Dkt. 59) at 8.) Although the FAC refers at times to the City's "negligent hiring, negligent supervision, and negligent retention" of Shammas (see, e.g., FAC ¶ 60), Plaintiff now concedes that he does not allege any

## A. Municipal Policy

The parties dispute how Plaintiff's <u>Monell</u> claim should be categorized. Plaintiff concedes that he "does not allege the existence of a municipal-wide policy of practice, such as 'failure to train.'" (Pl. Mem. at 18.) Rather, Plaintiff argues that he has adequately alleged a <u>Monell</u> claim premised "on the acts taken by a municipal official who possesses final decision-making authority over the type-of-acts complained of. . . ." (<u>Id.</u> at 11-12.) In their opening brief, Defendants ignore the "municipal policymaker" line of cases and focus on pattern or practice cases (Defs. Mem. at 3-6), but in reply Defendants also argue that Plaintiff's allegations do not fit within "'the narrow range of circumstances' where a policymaker[']s single municipal hiring decision can reflect deliberate indifference . . . ." (Defs. Reply Mem. in Supp. of Mot. to Dismiss ("Defs. Reply") (Dkt. 61, 64) at 2 (quoting <u>Bryan Cnty.</u>, 520 U.S. 397).)

Plaintiff's allegations, if taken as true, meet the requirements of <u>Monell</u> and its progeny. Plaintiff alleges that  Plaintiff does not

---

negligence claims based on state law. (Pl. Mem. at 21; <u>see also</u> FAC ¶ 61 (referring to reckless or knowing conduct by the City).) Thus, the court need not address whether Plaintiff exhausted any state administrative remedies in connection with his <u>Monell</u> claim. <u>See</u> <u>Patsy v. Bd. of Regents of Fla.</u>, 457 U.S. 496 (1982). As discussed below, for purposes of a Rule 12(b)(6) motion, Plaintiff adequately has alleged deliberate indifference on the part of the City. Of course, to survive summary judgment or to win at trial, Plaintiff will need to submit evidence showing more than mere negligence by the City.

allege that the City failed to screen Shammas when he originally was hired or that the City failed to train Shammas. Rather, Plaintiff makes specific factual allegations regarding Shammas's actual record and the City's actual response to that record. For the purposes of a Rule 12(b)(6) motion to dismiss, this is sufficient. See, e.g., Nesbitt v. Cnty. of Nassau, No. 05-CV-5513 (JG), 2006 WL 3511377, at *2-5 (E.D.N.Y. Dec. 6, 2006); Lovell v. Comsewogue Sch. Dist., 214 F. Supp. 2d 319, 324 (E.D.N.Y. 2002). Whether the facts ultimately demonstrate deliberate indifference on the part of the City to the possibility that Shammas would engage in future constitutional violations of the type alleged by Plaintiff is not at issue at this juncture.[3]

Defendants may be correct that as a matter of fact, the City's reaction to Shammas's prior record, which the City characterizes as not including Fourth Amendment violations, does not constitute deliberate indifference.[4] (Defs. Reply at 5.) But Defendants ignore that Plaintiff has alleged with some particularity that Shammas ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For the same reasons, Defendants' concern that "any plaintiff would have a viable Monell claim each time any officer had any type of disciplinary history whatsoever" is exaggerated. (Id.) Here, Plaintiff alleges specific disciplinary history that is related to the alleged constitutional violations; Plaintiff has not alleged, for example, that Shammas's history of tardiness and unexcused absence from work made it obvious to the City that he would engage in future Fourth Amendment violations.

Defendants' reliance on Connick v. Thompson, 131 S. Ct. 1350 (2011), is misplaced. As an initial matter, the Supreme Court framed its entire analysis in Connick in the failure-to-train

---

[3] In their motion to dismiss, Defendants do not address whether the NYPD Commissioner has final policymaking authority with respect to the particular conduct challenged in the lawsuit. See City of Waterbury, 542 F.3d 31 at 37. Nor do they challenge whether Plaintiff adequately has alleged a deprivation of his constitutional rights by the Individual Defendants. See id. at 36.

[4] For the purposes of this motion, the court need not address whether the prior incidents constituted Fourth Amendment violations, or whether Plaintiff need make such a showing.

context. For example, the Court explained that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. at 1359. It further held that "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 1360 (quoting Bryan Cnty., 520 U.S. at 409). And even notwithstanding the Supreme Court's concerns regarding failure-to-train municipal liability, the Court left open the possibility, first hypothesized in City of Canton, that a single incident in the failure-to-train context can be so extreme as to warrant municipal liability in the absence of a pattern of similar constitutional violations. Id. at 1366.

But this is not a failure-to-train case, and Plaintiff's theory does not rest upon a pattern of similar constitutional violations by other officers within the NYPD. (See Pl. Mem. at 18 (Plaintiff "does not allege the existence of a municipal-wide policy of practice, such as 'failure to train.'").) Rather, as discussed above, Plaintiff alleges that a single decision by a municipal policymaker constituted the municipal policy in this case. Connick does not squarely address such a theory, and therefore does not control in this case. Cf. Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) (post-Connick case analyzing Section 1983 claim based on decision or omission by policymaking official and relying on pre-Connick cases, including Bryan County and Amnesty America).

### B.   Causation

"Causation generally is a question for the finder of fact." DePace v. Flaherty, 183 F. Supp. 2d 633, 638 (S.D.N.Y. 2002) (denying motion to dismiss Section 1983 action alleging retaliation for exercise of First Amendment rights); Jeffes, 208 F.3d at 61. The Second Circuit has equated the "moving force" standard from Bryan County with that of proximate causation.

See Cnty. of Erie, 654 F.3d at 342; see also City of Okla. City v. Tuttle, 471 U.S. 808, 833 n.9 (Brennan, J., concurring) (recognizing that the "[o]rdinary principles of causation used throughout the law of torts" apply to Monell claims). Here, Plaintiff alleges that ███████████ ███████████████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ Taking the allegations in the FAC as true, Plaintiff has adequately alleged causation. Cf. Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 399 (S.D.N.Y. 2013) (on motion to dismiss, dismissing Section 1983 claim against housing authority for lack of adequate allegation of causation, but sustaining Section 1983 claim against city for police conduct). Notably, Plaintiff's allegations describing the December 2009, incident focus on Shammas's affirmative conduct toward Plaintiff; Shammas was not a mere observer of the incident, and Defendants have not argued that the incident would have occurred even if Shammas had not been present.

Defendants argue that because the prior incidents involving Shammas did not involve physical force or an arrest scenario, Plaintiff has failed to allege that the Commissioner's decisions proximately caused (or were the "moving force" behind) the constitutional violation. (Defs. Mem. at 6.) Cf. Ortega v. Roulhac, No. 13-CV-4717, 2015 WL 337394, at *17 (E.D. Pa. Jan. 22, 2015) (dismissing claim where Plaintiff failed to allege a nexus between employee's demotion for prior misconduct and the alleged constitutional violation). The cases cited by Defendants for the proposition that dismissal is proper at the pleading stage rely on factual determinations. See Ameduri v. Vill. of Frankfort, 10 F. Supp. 3d 320, 343-44 (N.D.N.Y. 2014) (granting motion for summary judgment for "want of proximate causation" and deciding that the

alleged failures to supervise and discipline were not "causally related to the injuries set forth in plaintiff's complaint"); Lamarche v. Agosto, No. 10-CV-561 (FB) (LB), 2013 WL 394702 (E.D.N.Y. Jan. 31, 2013) (ruling at summary judgment stage that plaintiff failed to establish the existence of a municipal policy and noting that the City had properly investigated and disciplined the defendant-officer for a prior incident); Longin ex rel. Longin v. Kelly, 875 F. Supp. 196, 201 & n.5 (S.D.N.Y. 1995) (granting summary judgment where the plaintiff's evidence did not support an inference that the failure to discipline the officer in question "evidences a systemic failure to discipline correction officers for the use of force" and questioning how the failure to discipline "could possibly have caused the incident" in question).

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Monell claim against the City is DENIED.[5] Each Defendant is hereby DIRECTED to file an Answer to the FAC within fourteen (14) days of entry of this Memorandum and Order.

SO ORDERED.

Dated: Brooklyn, New York  
       February 27, 2015

s/Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge

---

[5] Based on the foregoing analysis, the court need not address Plaintiff's request for leave to further amend the complaint. (See Pl. Mem. at 21-22; Defs. Reply at 7.)