D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

MITCHELL STERN,

               Plaintiff,

     -against-

THE CITY OF NEW YORK, P.O. GEORGE
SHAMMAS, Shield No. 2781, P.O. DANIEL
CASTILLO, DEPUTY SHERIFF SERGIO
BOCANUMENTH, DEPUTY SHERIFF
DENISE SHENTON, Individually and in their
Official Capacities,

               Defendants.
--------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**

**12-CV-5210 (NGG) (RER)**

**PUBLIC VERSION
(REDACTED)**

     Plaintiff Mitchell Stern brings this Section 1983 action against Defendant the City of New York ("the City") and four individual police officers (the "Individual Defendants"), alleging that the Individual Defendants used excessive force in falsely arresting and imprisoning him during an incident that occurred on December 16, 2009. (See generally First Am. Compl. ("FAC") (Dkts. 42-43).[1]) Plaintiff further contends that the City is responsible for his injuries due to its inadequate supervision and discipline of Individual Defendant Police Officer George Shammas for his prior conduct. (Id. ¶¶ 56-62.) Defendants have moved for partial summary judgment, seeking to dismiss Plaintiff's Monell claim against the City. (See Not. of Mot. for Summ. J. (Dkt. 57).) For the reasons set forth below, the motion for partial summary judgment is GRANTED.

---

[1] The FAC was filed under seal, as it contains information regarding Defendant Police Officer George Shammas's disciplinary history. A redacted version is filed at Dkt. 43.

# I. BACKGROUND

## A. Facts

The following facts are either undisputed, or where facts are in dispute, viewed in the light most favorable to Plaintiff.

### 1. Underlying Constitutional Violations

Defendants move for summary judgment only with respect to the Monell claim against the City. Accordingly, for purposes of this motion, the court treats as true the allegations contained in the FAC regarding the incident that occurred on December 16, 2009, at Plaintiff's home in Staten Island, New York.[2] (See generally FAC ¶¶ 16-33; see also Defs.' St. of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1") (Dkt. 94) ¶¶ 1-4; Pl.'s Resp. to Defs.' St. of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl.'s 56.1") (Dkt. 97) ¶¶ 1-4.) This includes the allegations that: Defendants falsely arrested Plaintiff (see Defs.' 56.1 ¶ 4; Pl.'s 56.1 ¶ 4); Plaintiff wrote down Shammas's name and badge number in response to Shammas's "unprovoked hostility" (FAC ¶ 21); Shammas "stated in a loud voice that he needed to arrest [Plaintiff] in order to protect himself" (id. ¶ 23); and Defendants used excessive force by jumping on Plaintiff's back, pinning him against the wall, punching, kicking, and choking him, restraining him, and causing additional pain by forcing his handcuffed hands into the air (Pl.'s 56.1 ¶ 5; FAC ¶¶ 23-26).

---

[2] Defendants dispute Plaintiff's reference throughout his opposition to what Defendants characterize as "conclusory allegations" contained in the FAC. (See Reply Mem. of Law in Further Supp. of Defs.' Partial Mot. for Summ. J. (Dkt. 99) at 3 n.2.) But Plaintiff is correct that for purposes of this motion, the court takes as true the allegations contained in the FAC describing the December 16, 2009, incident, and Plaintiff need not point to record evidence supporting those allegations. (See Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. (Dkt. 96) at 8 n.3.) Moreover, Plaintiff's description of the specific underlying allegations is relevant; determining whether the City is responsible for the violation of Plaintiff's constitutional rights requires the court to reference both Shammas's prior conduct (as demonstrated by record evidence), and the conduct at issue in this case (as demonstrated, for purposes of this motion, by the specific allegations in the FAC).

### 2. Shammas's Disciplinary Record

*a.    Hiring*

Shammas was appointed to the New York City Police Department ("NYPD") on July 1, 2004, and graduated from the Police Academy on January 19, 2005.  (Defs.' 56.1 ¶ 7; Pl.'s 56.1 ¶ 7.)

*b.    January 2005 - January 2006,* 

(Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 8.)

(Defs.' 56.1 ¶ 9; Pl.'s 56.1 ¶ 9.)

*c.    March 21, 2006,*

---

[3] The court refers to documents produced in discovery between the parties by control number.

██████████████████████████████████████████████████

████████████████████████████████████

      *d.*     *July 6, 2006,* ████████████████████

On July 6, 2006, █████████████████████████████████████

██████████████████████████████████████████

   ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[4] ████████████████████████████████████████████████
████████████████████

[5] ████████████████████████████████████████████
████████████████████████



e. ▮▮▮▮▮▮▮▮▮▮▮ *and Discipline for Prior Violations*

On September 16, 2006, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



f.    *January 7, 2009,* ██████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



g.    *Termination from the NYPD*



Shammas was ultimately dismissed from the NYPD, effective November 15, 2011.

3.    <u>Other Evidence Submitted by Defendants</u>

Defendants submitted two additional documents in support of their motion. The first, an excerpt from the NYPD Patrol Guide, purports to define "command discipline" and outlines the procedures for issuing command discipline. (Patrol Guide, Procedure No. 206-02 (Depoian Decl., Ex. M (Dkt. 95-13)).) The second is an excerpt from the NYPD Supervisor's Guide Monitoring and Assistance Programs, and purports to define the various levels of probationary monitoring available for NYPD officers. (Supervisor's Guide Monitoring & Assistance Programs (Depoian Decl., Ex. N (Dkt. 95-14)).)

Plaintiff argues that two documents were "not produced in discovery," and/or are not "self-authenticating," and therefore are inadmissible. (Pl.'s 56.1 ¶¶ 37-42.) Defendants respond

that they attached these documents to their motion "for informational purposes only," i.e. to provide definitions to the court of terms used in other documents, and that one of the two documents is, in fact, publicly available. (Reply Mem. of Law in Further Supp. of Defs.' Partial Mot. for Summ. J. ("Defs.' Reply") (Dkt. 99) at 3.) Significantly, Defendants do not appear to argue that the existence of these policies and definitions demonstrates that Shammas was, in fact, subjected to them.

As an initial matter, Plaintiff has not formally moved to strike the exhibits, and does not explain whether Defendants were under any obligation to produce these particular documents in discovery, whether a failure to produce the documents would result in striking them here,[8] or whether including the documents in the record would prejudice him in any way. See Fed. R. Civ. P. 37(c)(1); see also, e.g., Lujan v. Cabana Mgmt., Inc., 284 F.R.D. 50, 70-71 (E.D.N.Y. 2012) (striking materials submitted in opposition to motion for summary judgment because defendants failed to produce them in response to plaintiffs' discovery requests and plaintiffs were severely prejudiced by defendants' failure to produce). Thus, the court moves on to Plaintiff's argument that the documents are not self-authenticating.

Under Federal Rule of Evidence 902(5), "Official Publications," such as "a book, pamphlet, or other publication purporting to be issued by a public authority" are self-authenticating. Accordingly, for purposes of this motion, the court concludes that the two documents (both purporting to be issued by the NYPD) meet this criterion. Cf. In re UBS Auction Rate Sec. Litig., No. 08-CV-2967 (LMM), 2010 WL 2541166, at *14 (S.D.N.Y. Nov. 9, 2011). Furthermore, Plaintiff has failed to provide any reason to doubt the authenticity of the two documents. In addition, the documents were submitted by the City's Assistant Corporation Counsel, "based upon personal knowledge, the books and records of the City of

---

[8] Nor do Defendants affirmatively state in their Reply that the documents were not requested as part of discovery.

New York, and conversations with its agents and employees." (Depoian Decl. ¶ 3.) Thus, the court includes the contested exhibits in the record for purposes of this motion for summary judgment; however, as discussed above, the court does not view the existence of the documents as demonstrating the specific discipline or probation to which Shammas was subjected. Nor does the court find the documents particularly helpful in the absence of deposition testimony concerning Shammas's actual disciplinary and probationary experience.[9]

### B.     Procedural History

Plaintiff filed this action on October 17, 2012. (Compl. (Dkt. 1).) The City filed an Answer to the Complaint on January 15, 2013 (Dkt. 11); Individual Defendants Sergio Bocanumenth and Denise Stenton filed an Answer to the Complaint on March 15, 2013 (Dkt. 17); and Shammas and Individual Defendant Daniel Castillo filed an Answer to the Complaint on April 2, 2013 (Dkt. 21). With leave of court, Plaintiff filed the FAC on April 3, 2014. Defendants moved to dismiss the <u>Monell</u> claim as inadequately alleged as a matter of law. (<u>See</u> Not. of Mot. (Dkt. 57).) In a Memorandum and Order dated February 9, 2015, the court denied the motion to dismiss. (Feb. 9, 2015, Mem. & Order (Dkts. 74, 83).) Defendants subsequently filed an Answer to the FAC. (Dkts. 79, 81.) On April 29, 2015, Defendants moved for summary judgment on Plaintiff's <u>Monell</u> claim. (<u>See</u> Not. of Mot. for Summ. J.)

## II.     LEGAL STANDARDS

### A.     Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is

---

[9] Neither Plaintiff nor Defendants submitted any deposition testimony in connection with this motion. (<u>Cf.</u> Defs.' Reply at 10 ([A]t no time did [P]laintiff ever seek to conduct a single deposition related to his . . . <u>Monell</u> claim.").)

material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the court "is required to construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." Trammell v. Keane, 338 F.3d 155, 161 (2d Cir. 2003); see also Anderson, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

The moving party bears the initial burden to show an absence of genuine factual dispute. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment will be granted if the opposing party then "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, the opposing party must do more than demonstrate "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, and may not rely on "conclusory allegations," Twin Labs., Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990).

## B. Monell Liability

The resolution of this motion follows the court's prior denial of Defendants' motion to dismiss the Monell claim. (See Feb. 9, 2015, Mem. & Order at 6-8.) Accordingly, the court presumes familiarity with its prior decision, and applies the same legal standard in this Memorandum and Order, but now based on the facts before the court, and not based solely on Plaintiff's allegations in the FAC.

14

A municipality cannot be held liable pursuant to 42 U.S.C. § 1983 under a theory of respondeat superior. Monell v. Dep't of Social Servs. of New York, 436 U.S. 658, 692 (1978). However, under Monell, a municipality may be held liable for the constitutional violations of its employees when such violations result from the municipality's official policy. Id. at 693. Such a policy may be (1) an express policy, (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,'" City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (quoting Adickes, 398 U.S. at 168), or (3) a decision by a person with "final policy making authority," see Praprotnik, 485 U.S. at 112; Pembaur v. City of Cincinnati, 475 U.S. 469 (1986). Here, Plaintiff's theory of liability focuses solely on the third category of city policies: a decision or decisions by a final policymaker.

Both affirmative actions and omissions may qualify as city policies under Monell. See Cash v. Cnty. of Erie, 654 F.3d 324, 334 (2d Cir. 2011) ("A municipal policy may be pronounced or tacit and reflected in either action or inaction."); see also, e.g., City of Canton v. Harris, 489 U.S. 378, 396 (1989) (O'Connor, J., concurring in part and dissenting in part) ("Where a Section 1983 plaintiff can establish that the facts available to city policymakers put them on actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens, the dictates of Monell are satisfied."). Under Monell, Pembaur, and their progeny, a decision by a municipal policymaker on even "a single occasion" may expose the municipality to Section 1983 liability. Pembaur, 475 U.S. at 471; see also Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004) (Sotomayor, J.) ("[A] single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability.").

15

"Whether the official in question possessed final policymaking authority is a legal question, which is to be answered on the basis of state law." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (internal citations omitted). "'[T]he relevant legal materials, includ[e] state and local positive law, as well as custom or usage having the force of law.'" Id. (alterations in original) (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)). "The official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be 'responsible under state law for making policy in that area of the [municipality's] business.'" Id. (emphasis and alteration in original) (quoting Praprotnik, 485 U.S. at 123).

As noted above, Monell liability is not akin to vicarious liability. Nor is a city liable where its actions are merely negligent. Rather, a plaintiff can only pursue a claim against a city where the city's policies—no matter which theory the plaintiff relies on—"reflect[] deliberate indifference to the constitutional rights of its inhabitants." City of Canton, 489 U.S. at 392. The deliberate indifference standard "'is a stringent standard of fault.'" Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997)). "The operative inquiry is whether [the] facts demonstrate that the policymaker's inaction was the result of 'conscious choice' and not 'mere negligence.'" Cash, 654 F.3d at 334 (quoting Amnesty Am., 361 F.3d at 128). The deliberate indifference inquiry "necessarily depends on a careful assessment of the facts at issue in a particular case." Id.

A plaintiff bringing a Monell claim also must establish a causal connection between the municipality's official policy and the underlying constitutional violation. This causation element has been described by courts in a variety of ways. See Cash, 654 F.3d at 340 (describing

causation element for <u>Monell</u> claims in terms of tort law's concept of "proximate causation");
<u>Roe v. City of Waterbury</u>, 542 F.3d 31, 37 (2d Cir. 2008) (describing causation element as
requiring a showing that municipality was the "'moving force'" behind the injury (quoting <u>Bryan
Cnty.</u>, 520 U.S. at 404)); <u>see also</u> <u>City of Canton</u>, 489 U.S. at 385 (examining "whether there is a
direct causal link between a municipal policy or custom and the alleged constitutional
deprivation"). A plaintiff may prove the causation element by showing "that while the
policymaker himself engaged in 'facially lawful . . . action,' he indirectly caused the misconduct
of a subordinate municipal employee." <u>Jeffes</u>, 208 F.3d at 61 (quoting <u>Bryan Cnty.</u>, 520 U.S.
at 405-07).

## III.   DISCUSSION

Plaintiff puts forward a somewhat unusual theory of his <u>Monell</u> claim related to police
discipline and supervision. Rather than pursuing a well-worn path of submitting evidence related
to the City's express policies and practices (or lack thereof), or its informal customs and
practices on a municipality-wide basis, Plaintiff relies exclusively on the theory that the City's
policy in this case was embodied only in specific actions (and omissions) taken by NYPD
policymakers, such as the Commissioner and First Deputy Commissioner, concerning
Shammas's tenure in the NYPD. (<u>See, e.g.</u>, Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for
Summ. J. ("Pl.'s Mem.") (Dkt. 96) at 2 ("[Plaintiff] need not make out a municipality-wide
custom or practice to prove a <u>Monell</u> claim under applicable Supreme Court precedent."); <u>id.</u>
at 12 ("Accordingly, [Plaintiff] need establish no City-wide 'policy or custom' to establish his
<u>Monell</u> claim but has to prove at least one decision by a municipal policy-maker that caused his
injuries.").) While Plaintiff's theory is, as a matter of law, cognizable under Supreme Court
precedent (and survived Defendants' motion to dismiss), Plaintiff has failed to marshal sufficient

17

evidence for a reasonable jury to find that, in this case, the City acted with deliberate indifference. Cf. Jones v. Wellham, 104 F.3d 620, 624-27 (4th Cir. 1997) (analyzing Plaintiff's theory in analogous case and rejecting plaintiff-victim's argument that final policymaker was deliberately indifferent to victim's constitutional rights in failing to properly discipline defendant-officer for prior misconduct).

## A. Existence of a Municipal Policy or Custom

The parties dispute the relevance of the Supreme Court's decision in Connick v. Thompson, 131 S. Ct. 1350 (2011). Defendants argue that because "Plaintiff's Monell claim is, in essence, a failure to discipline or supervise claim, . . . it should be controlled by the strictures set forth by the Supreme Court in Connick." (Mem. of Law in Supp. of Defs.' Partial Mot. for Summ. J. ("Defs.' Mem.") (Dkt. 93) at 10.) Plaintiff counters that Connick did not overrule prior Supreme Court and Second Circuit precedent that a single decision by a final policymaker can give rise to Monell liability, and argues that Defendants simply ignore cases such as Pembaur, Bryan County, and Amnesty America. (See Pl.'s Mem. at 19 & n.13.) The court addressed these arguments in its prior Memorandum and Order, in connection with Defendants' motion to dismiss. (See Feb. 9, 2015, Mem. & Order at 10-11 (explaining, inter alia, that Connick primarily governs failure-to-train cases, and that even the Connick decision "left open the possibility . . . that a single incident in the failure-to-train context can be so extreme as to warrant municipal liability in the absence of a pattern of similar constitutional violations" (citing Connick, 131 S. Ct. at 1366)).)

In Defendants' view, every plaintiff raising a Monell claim post-Connick must establish a pattern of similar constitutional violations. But the Second Circuit has made clear in recent decisions that the "final policymaker" theory survived Connick, and that a showing of a pattern

of constitutional violations is not necessary for all <u>Monell</u> claims. <u>See, e.g.</u>, <u>Jones v. Town of E. Haven</u>, 691 F.3d 72, 81 (2d Cir. 2012); <u>Cash</u>, 654 F.3d at 336 ("[W]e begin by noting that the pattern ordinarily necessary to prove deliberate indifference <u>in the context of a failure-to-train claim</u> does not neatly transfer to this case." (emphasis added)). Defendants may be correct that Plaintiff's theory, at times, resembles the failure-to-train or failure-to-supervise theories of liability described in <u>Connick</u>. But Plaintiff makes clear that he proceeds solely under the final policymaker theory concerning the NYPD's specific discipline (or lack thereof) of Shammas.

Accordingly, the first question is whether a reasonable jury could find that the NYPD Commissioner's decisions to discipline Shammas in a particular manner (and/or his failure to order more significant discipline) constitute a City policy in this case. Such a determination requires the court to review state and local law in order to resolve whether the NYPD Commissioner (or his delegee) is responsible under state and local law for making policy in the area of personnel discipline. Plaintiff argues that the NYPD Commissioner is expressly charged with such authority by the New York City Charter. <u>See</u> N.Y.C. Charter § 434(a) ("The commissioner shall have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department."); <u>id.</u> § 434(b) ("The commissioner shall be the chief executive officer of the police force. He shall be chargeable with and responsible for the execution of all laws and the rules and regulations of the department."); <u>see also</u> <u>Walton v. Safir</u>, 122 F. Supp. 2d 466, 477-78 (S.D.N.Y. 2000) (holding that section 434 of the City Charter vests the NYPD Commissioner with official policymaking authority concerning terminations); <u>Boss v. Kelly</u>, 776 N.Y.S.2d 772, 774 (Sup. Ct. 2004) ("The [NYPD] Commissioner exercises broad discretion to manage the Police Department, necessarily including deployment of personnel and their assignment to appropriate duties. That discretion

extends to personnel evaluation, investigation and discipline. It includes imposition of penalties, and specific assignment restrictions, on administratively disciplined officers."), aff'd, 793 N.Y.S.2d 423 (App. Div. 2005).

Thus, under appropriate circumstances, decisions by the NYPD Commissioner related to discipline (or employee terminations) can be viewed as City "policy" and can result in potential Monell liability.[10] Cf., e.g., Pipitone v. City of New York, Nos. 06-CV-145, -2843, -2954, -3101, -2864, -3591, 07-CV-2189 (RJD) (JMA), --- F. Supp. 3d ---, 2014 WL 4954488, at *13 (E.D.N.Y. Sept. 30, 2014) ("The single action or inaction of a municipal policymaker, such as a specific failure to adequately supervise or discipline an officer, can also form an official policy or custom attributable to a municipality for purposes of municipal liability." (citing Amnesty Am., 361 F.3d at 125-26; Pembaur, 476 U.S. at 480-81)); Lovell v. Comsewogue Sch. Dist., 214 F. Supp. 2d 319, 324 (E.D.N.Y. 2002) (denying motion to dismiss where plaintiff-teacher alleged that final policymaker-principal caused violation of her constitutional rights by previously failing to discipline students who sexually harassed her).[11] However, as discussed below, even if the

---

[10] Defendants argue that it is not clear in this case whether the NYPD Commissioner had sufficient notice of Shammas's disciplinary record at the time of the December 16, 2009, incident to render him a final policymaker at that time. (See Defs.' Mem. at 12-13.) Plaintiff responds that in addition to the NYPD Commissioner, other high-ranking NYPD officials were involved in the discipline of Shammas, including the First Deputy Commissioner, the Chief of Personnel, and the Assistant Deputy Commissioner - Trials. (See Pl.'s Mem. at 15-16.) According to Plaintiff, the involvement of "some or all of" these officials in the discipline of Shammas is sufficient evidence to conclude that there was a final policy regarding the discipline of Shammas. (Id. at 16.) In addition, Plaintiff argues that he need not identify a specific final policymaker in order to bring his claim against the City, just as he need not name a specific individual as a defendant to bring a Monell claim against the City. (Id. at 16-18.) In the alternative, Plaintiff requests leave to conduct additional discovery to obtain documents and deposition testimony from the NYPD Commissioner and other high-ranking officials. (Id. at 16 n.9.) Given the court's finding concerning deliberate indifference, see infra Part III.B, the court need not decide whether the NYPD Commissioner was sufficiently involved in the discipline of Shammas to render him a final policymaker in this case, or whether Plaintiff could prevail by pointing to other high-ranking NYPD officials who were more involved than the NYPD Commissioner in advance of the December 16, 2009, incident. For the same reason, Plaintiff's request for additional discovery is DENIED.

[11] The court notes that Plaintiff's case differs significantly from the majority of cases brought under the final policymaker theory. Typically, a plaintiff argues that it was the final policymaker's actions that implemented or caused the constitutional violation, often in the context of adverse employment decisions related to a government employee-plaintiff. For example, in Safir, the plaintiff alleged that the NYPD Commissioner terminated her

NYPD Commissioner or one of his delegees is considered a final policymaker in this case, summary judgment is appropriate because Plaintiff has failed to submit sufficient evidence for a reasonable jury to find that the NYPD officials acted with deliberate indifference in disciplining Shammas.

## B. Deliberate Indifference by the City

A city may be held liable under <u>Monell</u> only where it exhibited deliberate indifference to a risk of the violation of the plaintiff's constitutional rights. Here, the City's actions can be characterized at worst as negligent—far from the "'stringent standard of fault'" of deliberate indifference. <u>Connick</u>, 131 S. Ct. at 1360 (quoting <u>Bryan Cnty.</u>, 520 U.S. at 410); <u>see also</u> <u>Amnesty Am.</u>, 361 F.3d at 128 ("[P]laintiffs' evidence must establish [] that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious,' and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." (quoting <u>Vann v. City of New York</u>, 72 F.3d 1040, 1049 (2d Cir. 1995)). Plaintiff offers into evidence Shammas's disciplinary record in an attempt to show that the City should have done more to keep Shammas off the streets and away from Plaintiff on

---

employment in retaliation for her public criticism of the department. 122 F. Supp. 2d at 466. After a bench trial, the court rendered judgment for the plaintiff, holding that "the decision to terminate plaintiff['s] employment as a New York City police officer was made at the highest level of the Department . . . in retaliation for the exercise of her First Amendment rights." <u>Id.</u> at 478, 481; <u>see also, e.g.</u>, <u>Jeffes</u>, 208 F.3d at 58-61 (holding that county sheriff was official policymaker with respect to corrections officers' claims that sheriff retaliated against them for exercising their First Amendment rights). And in <u>Pembaur</u>, in which the Supreme Court first articulated the final policymaker theory, plaintiff alleged that a county prosecutor formulated official policy in deprivation of his Fourth Amendment rights when the prosecutor advised the police to enter and search plaintiff's premises without plaintiff's consent and without a warrant. <u>See generally</u> 475 U.S. at 469; <u>see also</u> <u>Bryan Cnty.</u>, 520 U.S. at 405-06 (recognizing that <u>Pembaur</u> left open the possibility that a city can be liable under <u>Monell</u> "based on a single decision attributable to a municipality," but also recognizing that "[c]laims not involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof"). (<u>See also</u> Defs.' Mem. at 11 n.4 ("This case is easily distinguished on the basis that the <u>Pembaur</u> decision itself only addressed decisions by policymakers that were themselves the unconstitutional acts complained of . . . .").)

December 16, 2009. But Plaintiff's evidence could not support a jury's finding of deliberate indifference.

First, it is undisputed that the City did, in fact, respond to the two most significant incidents involving Shammas cited by Plaintiff █████████████████████████ ██████████████████████████ and disciplined him accordingly. Over the course of Shammas's tenure with the NYPD, the City█████████████████████████

██████████████████████████████████████████████████████

█████████████████████ This was not a situation where the City either failed to investigate prior incidents involving Shammas, or recklessly ignored citizen complaints against Shammas. See, e.g., Vann, 72 F.3d at 1049 (2d Cir. 1995) ("An obvious need [to protect against constitutional violations] may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."); Mahan v. City of New York, No. 00-CV-6645 (DGT), 2005 WL 1677524, at *7 (E.D.N.Y. July 19, 2005) (granting summary judgment where plaintiff failed to show "anything close to a complete failure to investigate" and where " the evidence show[ed] that the NYPD did investigate every allegation against [the officer]"). A plaintiff bringing a Monell claim must do more than simply second-guess the City's prior, good-faith disciplinary decisions. See Connick, 131 S. Ct. at 1363 ("[Section 1983] does not provide plaintiffs or courts carte blanche to micromanage local governments throughout the United States."); Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 777 (10th Cir. 2013) ("Rarely if ever is 'the failure of a

police department to discipline in a specific instance . . . an adequate basis for municipal liability under Monell.'" (quoting Butler v. City of Norman, 992 F.2d 1053, 1056 (10th Cir. 1993)).

The court finds particularly instructive the Fourth Circuit's decision in Jones v. Wellham—another case where the plaintiff relied exclusively on a final policymaker theory rather than evidence of a pattern of constitutional violations or an express policy. 104 F.3d 620, 624-27 (4th Cir. 1997). There, a police officer who was found at trial to have raped the plaintiff had been accused of sexual assault by another woman years before the incident with plaintiff. Id. at 623. As a result of the prior incident, the officer was disciplined, but was not discharged from the police force. Id. The plaintiff argued that the county's failure to discharge the officer for his prior alleged sexual assault demonstrated its deliberate indifference to the officer's violation of her constitutional due process rights. Affirming the district court's award of summary judgment in favor of the county, the Fourth Circuit explained that "with the benefit of hindsight," the county's decisions "were clearly unfortunate, might perhaps be thought imprudent, or even be found legally negligent, but that does not suffice." Id. at 627. Here, the same is true. The record before the court demonstrates that the City investigated the two most significant incidents involving Shammas, and in connection with each, issued formal discipline and/or brought an administrative proceeding. While Plaintiff may question the speed with which the City reached a final adjudication, nothing in the record indicates that the City was reckless (or worse) in its discipline of Shammas.[12] Moreover, while Plaintiff questions why a formal charge was not brought related to Shammas's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the record indicates that the Investigations Unit ultimately could not determine whether Shammas's actions with respect to

---

[12] Similarly, although Plaintiff represents in his brief that the Shammas's superiors "covered [] up" his misconduct "rather than recognize [its] seriousness" (Pl.'s Mem. at 21), nothing in the record demonstrates that a cover-up occurred; indeed, the record indicates that with respect to each incident, the City investigated the allegation or allegations and determined the appropriate sanction. That Plaintiff disagrees in hindsight with the formal charges brought or the sanction reached does not render the investigation a "cover-up," nor does it demonstrate deliberate indifference on the part of the City.

23

████████were inappropriate. Plaintiff's case differs significantly from, for example,

Pipitone v. City of New York, in which the NYPD Commissioner, "aware of significant red

flags" concerning police corruption, such as "serious[,] unusual[, and] highly provocative"

evidence, "consciously chose to ignore them" and reinstated the officers in question rather than

discipline them or order additional investigation.[13] Nos. 06-CV-145, -2843, -2954, -3101, -2864,

-3591, 07-CV-2189 (RJD) (JMA), --- F. Supp. 3d ---, 2014 WL 4954488, at *15 (E.D.N.Y.

Sept. 30, 2014).

Second, although Shammas's disciplinary history included two prior incidents involving

members of the public, the two incidents could not have put the City on sufficient notice that he

would subsequently falsely arrest a member of the public and/or engage in the use of excessive

force. While the incidents██████████████████████were certainly serious,

neither involved the use of physical force or any allegation of a false arrest.[14] The Second

Circuit's decision in Vann is instructive. There, based on both evidence related to prior

complaints against the defendant-officer and evidence related to the City's "general methods of

dealing with problem policemen," the Second Circuit affirmed the district court's denial of

summary judgment on the Monell claims. Vann, 72 F.3d at 1049-51. Notably, the officer in

Vann was the subject of almost ten civilian complaints in a fifteen-month period for the use of

derogatory language and serious physical force, see id. at 1042-43, far from Shammas's two

---

[13] In Pipitone, the plaintiffs submitted evidence that the disciplinary process for the officer's prior conduct was severely flawed, as well a formal report commissioned by the Mayor concerning egregious issues with the NYPD's anti-corruption attitudes and policies during the time period relevant to the plaintiffs' claims. See id. at *5, 15. Here, Plaintiff failed to submit any evidence concerning flaws in the disciplinary practices followed in Shammas's case, or general flaws in the NYPD's disciplinary practices across all cases. Nor did Plaintiff submit any expert testimony concerning the NYPD's disciplinary practices.

[14] Indeed, it is not clear whether either prior incident involved the deprivation of constitutional rights. See, e.g., Miqui v. City of New York, No. 01-CV-4628 (FB) (VVP), 2003 WL 22937690, at *6 (E.D.N.Y. Dec. 5, 2003) (dismissing Monell claim where prior misconduct by officer did not involve "any constitutional deprivation" (emphasis in original)). But see Pipitone, 2014 WL 4954488, at *14 (holding that only "a serious and obvious risk of constitutional harm" is required, and not necessarily a prior deprivation of constitutional rights by the officer (emphasis in original)).

incidents prior to the one with Plaintiff. See also, e.g., Selvaggio v. Patterson, No. 13-CV-2436 (NGG) (RML), --- F. Supp. 3d ---, 2015 WL 1293007, at *17 (E.D.N.Y. Mar. 18, 2015) (granting summary judgment on failure-to-supervise Monell claim where plaintiff alleging underlying constitutional violation of false arrest could only point to one prior allegation of false arrest involving defendant-officers). And, unlike in Vann, Plaintiff here produced no evidence related to the City's general practices of disciplining officers, and instead relies solely on the actions taken by the City with respect to Shammas himself.

Plaintiff argues that Shammas's disciplinary record shows, "beyond any reasonable question," a "propensity to violence, his dishonesty and his lack of integrity, all of which rendered him unsuitable for continuing service as an active-duty [NYPD] officer." (Pl.'s Mem. at 20.) But Plaintiff frames the inquiry too broadly; the question is not whether, in hindsight, Shammas was qualified to be a police officer (indeed, if it were, his eventual termination would be probative evidence), but rather, given Shammas's disciplinary history, whether it should have been "obvious" to the City that he would falsely arrest a civilian and/or use excessive force. See Bryan Cnty., 520 U.S. at 411 ("A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." (emphasis added)). Based on the record before the court, a reasonable jury could not find that such a risk was "obvious," and could not find that the City acted with deliberate indifference through its final policymakers.

### C. Causation

Finally, Defendants argue that Plaintiff has failed to offer any evidence from which a reasonable jury could find that the City's policy—here, the NYPD's disciplinary decisions—caused the alleged constitutional violations. See City of Waterbury, 542 F.3d at 37 (describing

causation element as requiring a showing that municipality was the "moving force" behind the injury (quoting Bryan Cnty., 520 U.S. at 404)); see also City of Canton, 489 U.S. at 385 (examining "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation").

Plaintiff argues that the issue of causation should be reserved to the jury, and that he need only "demonstrate at trial that the decisions of the Commissioner to continue Shammas on active duty following both████████and the████████incidents, rather than terminate him, suspend him from active duty, or at the very least, require appropriate retraining or counseling, proximately caused Shammas to act toward [Plaintiff] in a way that deprived him of his constitutional rights." (Pl.'s Mem. at 25.) See also, e.g., Baynard v. Malone, 268 F.3d 229, 236 (4th Cir. 2001) (affirming jury finding of causation where school administrator failed to respond to "mounting evidence of potential misconduct by [a teacher]" in the months prior to the teacher's sexual abuse of plaintiff-student); Vann, 72 F.3d at 1051 ("Certainly the Department's retention of Morrison as a police officer despite his abusive history empowered him to make arrests even while off duty. And it would be entirely permissible for the jury to find that the Department's restoration of Morrison to full-duty status and its indifference to the postreinstatement civilian complaints against him caused him to feel entitled, whether on duty or off, to compel the 'respect' he demanded through the use of violence."); Pipitone, 2014 WL 4964488, at *15-18 (denying summary judgment where jury could reasonably find that the "gross failure" to discipline corrupt officer for prior conduct was the "moving force" behind murders later committed by officer and associates on behalf of criminal organization).

Defendants counter that "[w]here the prior alleged misconduct is 'of a different kind and magnitude than the [constitutional violations] alleged in the complaint,' a plaintiff cannot

establish that the 'failure to discipline' is 'causally related to the injuries set forth in [the] complaint.'" (Defs.' Mem. at 21 (quoting Ameduri v. Vill. of Frankfort, 10 F. Supp. 3d 320, 344 (N.D.N.Y. 2014)).) In Ameduri, for example, the court granted summary judgment on the Monell claim where the prior misconduct of the officer in question was unrelated to the officer's alleged assault against plaintiff. 10 F. Supp. 3d at 344; see also, e.g., Jones, 104 F.3d at 627 ("[M]ere cause-in-fact does not suffice to establish the required affirmative link. If that were the test, every depredation of this sort would give rise to municipal liability, for every § 1983 claimant harmed by such employee conduct could 'point to something the [municipality] "could have done" to prevent the unfortunate incident.'" (alternation in original) (quoting City of Canton, 489 U.S. at 392)).

Because the court has determined that a reasonably jury could not find that the City acted with deliberate indifference, the court declines to determine whether summary judgment is appropriate on the issue of causation.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment is GRANTED. The parties are DIRECTED to confer and to file within 14 days of the date of entry of this Memorandum and Order a joint document with proposed redactions for a publicly filed version of this Memorandum and Order. If the parties are unable to agree on any proposed redactions, they shall note the disagreements in a cover letter. The cover letter and proposed redactions shall be filed under seal.

SO ORDERED.

Nicholas G. Garaufis

Dated: Brooklyn, New York  
      May __, 2015

NICHOLAS G. GARAUFIS  
United States District Judge