12 CV 5210 (NGG) (RER)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MITCHELL STERN,

Plaintiff,

-against-

P.O. GEORGE SHAMMAS, Shield No. 2781, P.O.
DANIEL CASTILLO, DEPUTY SHERRIFF SERGIO
BOCANUMENTH, DEPUTY SHERRIFF DENISE
SHENTON, Individually and in their Official Capacities,

Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTIONS IN LIMINE

**ZACHARY W. CARTER**
*Corporation Counsel of the City of New York*
*Attorney for Defendants Shammas, Castillo,*
*Bocanumenth and Shenton*
*100 Church Street - Room 3-211*
*New York, NY 10007*


*Of Counsel: Carolyn Depoian*
*Tel: (212) 356-2358*
*Matter No. 2012-047366*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT

      POINT I

           EVIDENCE PERTAINING TO GEORGE SHAMMAS'S DISCIPLINARY HISTORY IS NOT ADMISSIBLE UNDER FRE 404(B) OR 608(B) ............................................................................................ 1

      POINT II

           PLAINTIFF IS NOT ENTITLED TO AN ADVERSE INFERENCE REGARDING THE VIDEOTAPE ........................................................................................ 4

           1.    There is No Evidence that the Individual Defendants Exercised Control over the Video ........................................................................... 5

           2.    There is No Showing That Defendants Acted with a Culpable Mind ........................................... 6

           3.    There is no Showing that the Video Contained Material Favorable to Plaintiff. ..................................... 7

           4.    Plaintiff Did Not Show That Any Prejudice Resulted from the Altered Video. ................................... 8

      POINT III

           DR. POMPA SHOULD BE PRECLUDED FROM TESTIFYING AS AN EXPERT ............................................... 9

**Pages**

POINT IV

    WALTER SIGNORELLI SHOULD BE
    PRECLUDED FROM TESTIFYING PURUSANT
    TO *DAUBERT V. MERRELL DOW
    PHARMACEUTICALS, 509 U.S. 579 (1993)* ........................................... 10

        A.    Given the Facts of this Case,
              Signorelli's Proffered Expert
              Testimony is not Reliable. ................................................11

        B.    Signorelli's Testimony Will Infringe
              on the Role of the Jury. .....................................................11

POINT V

    PLAINTIFF SHOULD BE PRECLUDED FROM
    REFERRING TO OR OFFERING THE PATROL
    GUIDE OR ANY NYPD TRAINING
    MATERIALS INTO EVIDENCE AT TRIAL ......................................... 12

POINT VI

    PLAINTIFF SHOULD BE PRECLUDED FROM
    CALLING AUDRA STERN, CAMERON STERN,
    AND IRENE GROSS AS WITNESSES AT TRIAL .............................. 14

CONCLUSION...................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                               **Pages**

Chin v. Port Auth. of N.Y. & N.J.,
 685 F.3d 135 (2d Cir. 2012) ................................................................................... 6

Daubert v. Merrell Dow Pharmaceuticals,
 509 U.S. 579 (1993)................................................................................................ 10

Fujitsu Ltd. v. Federal Express Corp.,
 247 F.3d 423 (2d Cir. 2001) .................................................................................... 5

GenOn Mid-Atl., LLC v. Stone & Webster, Inc.,
 282 F.R.D. 346 (S.D.N.Y. 2012) ............................................................................ 8

Gordon Partners v. Blumenthal (In re NTL, Inc. Sec. Litig.,
 244 F.R.D. 179 (S.D.N.Y. 2007.) ............................................................................ 6

Great N. Ins. Co. v. Power Cooling, Inc.,
 No. 06 CV 874, 2007 WL 2687666 (E.D.N.Y. Sept. 10, 2007)............................... 9

In re Rezulin Prods. Liab. Litig.,
 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ................................................................... 11

Kronisch v. United States,
 150 F.3d 112 (2d Cir. 1998) .................................................................................... 7

Lewis v. City of Albany Police Dept.,
 547 F.Supp.2d, 191, 200 (N.D.N.Y.)....................................................................... 2

Linkco, Inc. v. Fujitsu Ltd.,
 No. 00-Civ-7242 (SAS), 2002 U.S. Dist. LEXIS 12975 (S.D.N.Y. July 16, 2002)................ 11

Manigault v. City,
 11 CV 4307 (LAK) ............................................................................................. 2, 3

Mitchell v. Fishbein,
 No. 01 Civ. 2760, 2007 WL 2669581 (S.D.N.Y. Sept. 13, 2007)............................ 9

Orbit One Commc'ns, Inc. v. Numerex Corp.,
 271 F.R.D. 429 (S.D.N.Y. 2010) ..................................................................... 7, 8, 9

Quagliarello v. Dewees,
 802 F. Supp. 2d 620 (E.D. Pa. 2011) .................................................................... 12

**Cases**                                                                                                **Pages**

Residential Funding Corp. v. DeGeorge Fin. Corp.,
    306 F.3d 99 (2d Cir. 2002) ................................................................................ 6, 8

United States v. Stone,
    05 CR 401 (ILG), 2007 WL 4410054 (E.D.N.Y. Dec. 14, 2007) .......................... 4-5

Vazquez v. City et al.,
    10-CV-6277 (JMF) 2014 U.S. Dist. LEXIS 124483 (S.D.N.Y. Sept. 5, 2014)) ..................... 12

Whren v. United States,
    517 U.S. 806 (1996)............................................................................................. 12

Zubulake v. UBS Warburg LLC,
    229 F.R.D. 422 (S.D.N.Y. 2004) ....................................................................... 4-5

**Statutes**

Fed. R. Civ. P. 26 ................................................................................................... 10

Fed. R. Civ. P. 26(a)(2)........................................................................................ 9, 10

FRE 402 .................................................................................................................. 3, 14

FRE 403 .................................................................................................................. 3, 14

FRE 406(B) ............................................................................................................ 1, 3, 4

FRE 608(B) ............................................................................................................ 1, 3, 4

## PRELIMINARY STATEMENT

Defendants George Shammas, Daniel Castillo, Sergio Bocanumenth, and Denise Shenton respectfully submit this memorandum of law in opposition to plaintiff's motions in limine.  Defendants submit that: 1) Shammas's disciplinary history is completely inadmissible under the rules of evidence; 2) plaintiff is not entitled to a spoliation instruction regarding the videotape "made by an agent of the defendants;" 3) Dr. Dominic A. Pompa should be precluded from testifying as an expert in this case; 4) Walter Signorelli should precluded from testifying at all in this case; 5) the NYPD Patrol Guide training materials are irrelevant to this issues in this case and, regardless, are inadmissible hearsay; and 6) Audra Stern and Cameron Stern should be precluded from testifying in this case.[1]  Defendants respectfully request that plaintiff's motions in limine be denied for the reasons set forth herein.

## ARGUMENT

### POINT I

### EVIDENCE PERTAINING TO GEORGE SHAMMAS'S DISCIPLINARY HISTORY IS NOT ADMISSIBLE UNDER FRE 404(B) OR 608(B).

Plaintiff argues that Shammas's disciplinary record in its entirety should be admitted on the basis that it "explains Shammas fabricating a reason to arrest Stern even after Stern's car had been towed and Stern was returning to his house . . . and it may explain Shammas's use of excessive force to support his unsubstantiated claim that Stern was dangerous

---

[1] Other than Point III of plaintiff's motions in limine, filed on June 15, 2015, defendants, in their own motions in limine, seek to preclude the same evidence plaintiff now seeks to admit. Therefore, defendants' respectfully refer the Court to their motion papers for the gravamen of our arguments regarding the preclusion of certain evidence, but nonetheless respond herein to arguments made by plaintiff in his moving papers that defendants have not previously addressed.

and was dangerous and resisting arrest." Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Admit Certain Evidence at Trial ("Pl. Memo.") at p. 7. This argument is simply illogical. As the Court is aware and has acknowledged in the decision and order dated May 21, 2015, Shammas has never been accused of falsely arresting anyone, nor has he ever been accused of using excessive force against anyone. See Memorandum and Order dated May 21, 2015, at Civil Docket Sheet Entry No. 116 at p. 24. As a matter of common sense, to commit those more serious offenses would be substantially more likely to generate a civilian complaint.[2] Plaintiff fails to explain how falsely arresting him or using excessive force on him would serve in any way to prevent, rather than encourage, the lodging of a civilian complaint.

Moreover, Courts have found repeatedly that prior complaints (to CCRB or otherwise) are inadmissible hearsay if offered to prove the truth of the matters asserted by the complainants, and "[a]bsent admissible evidence of the truth of the matters asserted, there is nothing upon which to predicate a pattern or motive argument." Manigault v. City, 11 CV 4307 (LAK,) Corrected Order dated July 10, 2012, at Docket Entry No. 63 at p.3. Indeed, when evaluating the admissibility of prior complaints of wrongdoing as it pertains to an officer's motive under 404(b), Courts in this District have stated "that it is *virtually inconceivable* that any police officer would be ignorant of the fact that a false arrest . . . could lead to disciplinary or other adverse consequences . . ." (emphasis added) Id.

Plaintiff cites mainly to the case Lewis v. City of Albany Police Dept., 547 F.Supp.2d, 191, 200 (N.D.N.Y.) to support his contention that prior complaints against police officers are "admissible to establish [the officer]'s motivation and intent with regard to use of

---

[2] And in fact, plaintiff did file a complaint with the Civilian Complaint Review board for Shammas's actions in arresting him.

2

force." However, in <u>Lewis</u>, the Court allowed evidence of "strikingly similar" prior complaints to those in the instant case because the officer's identity was at issue in the case. <u>See</u> <u>id.</u> This analysis is not applicable to the instant matter since Shammas' identity is not in dispute, nor are any of the prior allegations against him even remotely similar to plaintiff's allegations in the instant case.

Finally, even assuming, <u>arguendo</u>, that Shammas's disciplinary record was minimally probative as to his motive, it is substantially outweighed by the the unfair prejudicial effect that would result from placing evidence before the jury of George Shammas's unrelated disciplinary charges by:

> (1) the risk that the evidence, notwithstanding a limiting instruction, would be used to show bad character and action in conformity therewith on the occasion in question, (2) confusion of the issues as between whether the incident that the plaintiff claims occurred here and whether the incidents that are the subjects of complaints by others ever actually occurred, and (3) the likelihood that disputes about the veracity of the other complaints would prolong the trial to an extent not remotely warranted by their limited probative value on the issue of motive.

<u>Manigault</u>, 11 CV 4307 (LAK), at Docket Entry No. 63 at p.3. Shammas's disciplinary record in its entirety should be prohibited under FRE 403.

Nor is Shammas' disciplinary history admissible under FRE 608(b) since there are no previous allegations that concern his character for untruthfulness. (P's Memo at 10.) Rather than point to any allegations of wrongdoing where Shammas gave a false statement, of which there are none, plaintiff argues that Shammas's actions speak to his credibility because, in the instances where he was found guilty and disciplined, he "failed to report his own wrongdoing . . .[and] did not comply with specific regulations of the New York Police Department requiring him to do so." (<u>Id</u>. at 11.) Indeed, plaintiff cites no case law in support of this position. Were

3

plaintiff correct that failing to report ones' own wrongdoing was probative of credibility, plaintiffs would be able to cross-examine police officers regarding certainly almost any and all instances of officer misconduct. See United States v. Stone, 05 CR 401 (ILG), 2007 WL 4410054 (E.D.N.Y. Dec. 14, 2007) (internal quotations omitted)("[I]f all that can be said about behavior is that it might be called improper, immoral, or unlawful ... asking about it cannot be justified under Fed. R. Ev. 608.") For all these reasons and as set forth more fully in Point I of defendants' motions in limine dated June 15, 2015, plaintiff should be precluded from offering any evidence of Shammas' disciplinary history.

## POINT II

### PLAINTIFF IS NOT ENTITLED TO AN ADVERSE INFERENCE REGARDING THE VIDEOTAPE.

Plaintiff seeks a spoliation instruction because he claims that, despite that the entire seizure of plaintiff's vehicle b eing video taped, when plaintiff received the videotape during his criminal court case, it captured only a thirty-second recording of the perimeter of plaintiff's vehicle, and the remainder of the tape was completely blank.[3] (Ps Memo at 12.) Plaintiff submits that an expert in audio and video forensics has reviewed the video and has concluded that the tape is "a portion of a longer recording" and is not an original. (Id.) Plaintiff further argues that this error is somehow attributable to the defendants. The video in question was initially turned over to the Department of Finance, not the New York City Police Department. Plaintiff is wrong.

---

[3] According to plaintiff, this videotape was produced to plaintiff's criminal court attorney during the criminal matter stemming from his false arrest. Defendants note that while a copy of a DVD of this video has been produced them, they have never been provided with a copy of the "videotape," despite our requests.

A party seeking spoliation sanctions must establish three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (citations omitted).   The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge…, and is assessed on a case-by-case basis." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) (internal quotations and citations omitted.)   Plaintiff's motion for an adverse inference should be denied because, as set forth below, plaintiff does not satisfy the elements of a claim for spoliation, and moreover, in light of the fact that the person who took the video will testify to what she observed at trial, plaintiff cannot show any prejudice resulted from the purportedly altered video.

While plaintiff is silent as to the exact nature of the adverse inference he seeks, plaintiff has adduced absolutely no evidence during discovery to support the instant claim.   In fact, there are two nonparty witnesses – one being Nicole Sawler, the individual who took the video – who will testify at trial about exactly what plaintiff purports has been omitted from the video. (St. Laurent Decl. Ex. 5.)   Her testimony will confirm that the four individual defendants in this case had absolutely nothing to do with the video in question, nor did they exercise any control over the preservation of this video.

1.   **There is No Evidence that the Individual Defendants Exercised Control over the Video.**

Plaintiff argues that he should be entitled to an adverse inference regarding the video because "the defendants [generally] had a clear obligation to maintain the videotape."

5

(Pls. Mem. at 13.)  Plaintiff points to no evidence to support his contention that the defendants had any control over the video other than his conclusory statement that the City's Scofftow Videocamera Procedure requires that the videotapes be "turn[ed] over to the deputy sheriff assigned to receive them who is then required to affix an identifying label to the tape(s) and deliver them to the Sheriff Videotape Library unit where they remain locked in a cabinet." (St. Laurent Decl. Ex. 4 at 3.)  Plaintiff's argument fails.

To show that a party had "control" over the evidence in question, a plaintiff must prove that that party had "the right, authority, or practical ability to obtain the documents from a non-party to the action." Gordon Partners v. Blumenthal (In re NTL, Inc. Sec. Litig., 244 F.R.D. 179, 195 (S.D.N.Y. 2007.)  Plaintiff has elicited no evidence whatsoever to show that any of the four individual defendants had "the right, authority, or practical ability to obtain" the video. While plaintiff speculates that the videotape was altered "during the pendency of [plaintiff's criminal] matter"[4] because of the "implications for Shammas's future in the NYPD," plaintiff presents no evidence that George Shammas had any control over this video.  In fact, plaintiff does not even suggest (let alone show) how any individual defendant would have had the opportunity to exercise control over the video, and therefore plaintiff has failed to meet his burden regarding the first prong of a spoliation motion.

## 2. There is No Showing That Defendants Acted with a Culpable Mind.

It is true that the culpable-state-of-mind element can be satisfied where a party shows that the "evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or negligently," Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002) (alteration and emphasis in original) (citation omitted.)  However, the Second

---

[4] Plaintiff does not bring a claim for malicious prosecution against the individual officers.

Circuit recently "reject[ed] the notion that a failure to institute a 'litigation hold' constitutes gross negligence per se." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 162 (2d Cir. 2012) (advocating a case-by-case approach where a party falls short of its duty to produce relevant evidence.)  Instead, a party's failure to implement good preservation practices is but one factor in determining whether sanctions should be imposed. See id. (citing Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 441 (S.D.N.Y. 2010)).

Here, plaintiff has not offered a scintilla of proof showing when, if ever, this video was altered, and in fact, suggests that it was done during plaintiff's criminal case, which concluded well before the filing of this lawsuit in 2012.  Plaintiff cannot, therefore, possibly prove that defendants had an obligation to preserve the video at the time it was altered, and accordingly, plaintiff cannot show any negligence on the part of defendants.  Nor does plaintiff present any evidence of bad faith or gross negligence on the part of defendants.  Even assuming, arguendo, that this video was negligently altered, there is no way to attribute this to the individual defendants in this case.  Therefore, the Court should find that defendants did not possess the requisite culpable state of mind to order an adverse inference sanction.

3.   **There is no Showing that the Video Contained Material Favorable to Plaintiff.**

Even assuming plaintiff is correct, and the video was deleted or tampered with by the defendants in this case, plaintiff has not presented any evidence that the allegedly deleted portion of the video was favorable to plaintiff.  To the contrary, defendants believe that it would have captured plaintiff's erratic behavior which would be favorable to the defendants, and we intend to call two nonparty witnesses to testify at trial as to what transpired on the "missing" video.  On this basis alone, plaintiff's spoliation motion should be denied. See Kronisch v. United States, 150 F.3d 112, 127 (2d Cir. 1998)("no adverse inference where party failed to

provide any extrinsic evidence that the subject matter of the lost or destroyed materials would have been unfavorable to the opposing party or would have been relevant to the issues in this lawsuit.")

Even the affidavit that plaintiff obtained from Ms. Sawler to support his purported spoliation motion is silent as to whether the purported missing portions of the video would have been favorable to plaintiff. In fact, the affidavit says nothing about plaintiff's behavior which alone suggests that it could, in fact, be favorable to the defendants. Regardless, when the destruction of evidence is merely negligent, as opposed to grossly negligent or in bad faith, relevance must be proven by the party seeking the sanctions. Residential Funding, 306 F.3d at 109. "[T]he party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction." Id. As discussed, infra, plaintiff has produced no evidence whatsoever to show the individual defendants exhibited bad faith or gross negligence. Nor has plaintiff adduced any evidence to show the video contained information favorable to plaintiff. Plaintiff's request for a spoliation instruction should be denied.

**4.      Plaintiff Did Not Show That Any Prejudice Resulted from the Altered Video.**

Finally, the Court should reject plaintiff's request for spoliation sanctions in the form of an adverse inference because the lack of the video does not prejudice or hinder his litigation of the case. An adverse inference jury instruction is simply inappropriate if the spoliating party cannot show that it suffered any prejudice. See GenOn Mid-Atl., LLC v. Stone & Webster, Inc., 282 F.R.D. 346, 353 (S.D.N.Y. 2012) (citations omitted); Orbit One, 271 F.R.D. at 431 (S.D.N.Y. 2010)("No matter how inadequate a party's efforts at preservation may

be, . . . sanctions are not warranted unless there is proof that some information of significance has actually be lost.")

Indeed, it is wholly insufficient for the moving party merely to point to the fact that the opposing party has failed to produce the requested information.  See Mitchell v. Fishbein, No. 01 Civ. 2760, 2007 WL 2669581, at *5 (S.D.N.Y. Sept. 13, 2007). "In the absence of bad faith or other sufficiently egregious conduct, it cannot be inferred from the conduct of the spoliator that the evidence would even have been harmful to him." Orbit One, 271 F.R.D. at 439 (internal quotations and citations omitted.)  Rather, "there must be extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party." Great N. Ins. Co. v. Power Cooling, Inc., No. 06 CV 874, 2007 WL 2687666, at *11 (E.D.N.Y. Sept. 10, 2007) (citation omitted.)  Plaintiff's motion for an adverse inference should be denied.

## POINT III

### DR. POMPA SHOULD BE PRECLUDED FROM TESTIFYING AS AN EXPERT.

Plaintiff argues that Dr. Dominic Pompa should be permitted to testify as an expert,  including  on the issue of the cause of plaintiff's injuries, because his testimony is reliable and relevant. (P's Memo at 18.)  He also argues that Dr. Pompa's "expert report" satisfies FRCP 26(a)(2.) (Id. at 19-21.)

First, as to the scope of Pompa's testimony, plaintiff argues that the Second Circuit permits treating physicians to testify about causation, provided that his opinion is based on the doctor's treatment of the plaintiff.  First, Dr. Pompa can offer no such illuminating testimony as he never obtained plaintiff's version of what happened to him during his arrest during the course of his treatment of plaintiff.  At his deposition, Dr. Pompa testified that he

treated plaintiff six days *after* this incident occurred, and he never even asked plaintiff about the force used during his arrest. See Pompa Deposition, Depoian Declaration, Ex. A at 74:21-75:22. He testified further that he knew "very little" about what happened, and that he did not know whether plaintiff even told him, during the course of his treatment, that his injuries were caused by the police. Id. Therefore, any testimony Dr. Pompa would offer regarding causation would be entirely speculative and does not derive from his own treatment of plaintiff. He should, therefore, be precluded from testifying as to his opinion regarding the cause of plaintiff's injuries, and his testimony should be limited to his (limited) treatment of plaintiff.

As to the sufficiency of Dr. Pompa's 26(a)(2) disclosure, the three page letter submitted by plaintiff as a "26(a)(2) disclosure," which simply recounts the single conversation Dr. Pompa had with plaintiff in March 2014, hardly passes Rule 26 muster. For these reasons, Dr. Pompa should be precluded from testifying as to his opinion regarding the cause of plaintiff's injuries, and his testimony should be limited to his (very limited) treatment of plaintiff.

### POINT IV

**WALTER SIGNORELLI SHOULD BE PRECLUDED FROM TESTIFYING PURUSANT TO *DAUBERT V. MERRELL DOW PHARMACEUTICALS*, 509 U.S. 579 (1993.)**

Plaintiff also moves in limine to permit the testimony of Walter Signorelli as an expert on police procedures, on the basis that he is qualified, reliable, and because his testimony will assist the trier of fact.[5]  Defendants disagree, and the Court should exclude Signorelli's report and opinions for all of the reasons set forth more fully in our motions in limine dated June

---

[5] Defendants do not move to preclude Mr. Signorelli from testifying as an expert on the basis that his 26(a) disclosure was inadequate, and do not oppose plaintiff's motion on these grounds.

15, 2015.  For the sake of brevity, defendants will not repeat those arguments herein and will

only respond to the arguments raised by plaintiff in his motions in limine.

      **A.**      **Given the Facts of this Case, Signorelli's Proffered Expert Testimony is not Reliable.**

        Signorelli's purported "analysis" is utterly devoid of methodology.  His opinions

are nothing more than unsupported conclusions based on his own credibility determinations.  In

the very first paragraph of the "opinion" section of his report, he discusses that he bases his

opinion on nothing other than his own "background, education, and training," which, without

more, is most certainly improper bases for an expert opinion.  Depoian Decl., Ex. E, ¶ 10;

Linkco, Inc. v. Fujitsu Ltd., No. 00-Civ-7242 (SAS), 2002 U.S. Dist. LEXIS 12975, at *13-14

(S.D.N.Y. July 16, 2002) (internal citation omitted) ("[A] court cannot permit experts to 'offer

credentials rather than analysis.'")

      **B.**      **Signorelli's Testimony Will Infringe on the Role of the Jury.**

        It is important to note that this case is about excessive force and false arrest, and

no more.  Issues such as police training, investigation, and policies and procedures are simply

irrelevant to this case, and no testimony proffered by Signorelli will aid a jury in deciding

whether the force used on plaintiff was excessive or whether there was probable cause to arrest

plaintiff.  Plaintiff argues that Mr. Signorelli's testimony will "help the jury understand police

procedures such as the use of force and the decision to effect an arrest . . . [and] [i]n the absence

of Signorelli, the jurors will struggle to understand these concepts, which are beyond the ken of

the average person."  (P's Memo at 18.)  To the contrary, these are nothing more than "lay

matters which a jury is capable of understanding and deciding without the expert's help," In re

Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004)(internal citation omitted)

and plaintiff should not be permitted to call Signorelli to testify for the sole purpose of "merely

repeat[ing] facts or opinions stated by other potential witnesses or in documents produced in discovery . . ." Id.[6]

Unlike the cases cited to by plaintiff (see e.g., Vazquez v. City et al., 10-CV-6277 (JMF) 2014 U.S. Dist. LEXIS 124483 at *35 (S.D.N.Y. Sept. 5, 2014)) where Signorelli's testimony has been permitted, here, there are no issues regarding police procedure to which Signorelli can testify that will illuminate any disputed issue of fact for the jury.  Signorelli's report does no more than improperly assess the credibility of the parties and reach ultimate legal conclusions, serving no permissible purpose whatsoever.  Quagliarello v. Dewees, 802 F. Supp. 2d 620, 625 (E.D. Pa. 2011) (granting defendants' motion to preclude Signorelli from testifying about "whether Officer Dewees used 'unreasonable' force, whether Dewees had 'probable cause,' whether the treatment of Plaintiff was 'unlawful'"…).  For these reasons, and for the reasons discussed in defendants' June 15, 2015 motions in limine, Signorelli should be precluded from testifying as an expert in this case.

### POINT V

### PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO OR OFFERING THE PATROL GUIDE OR ANY NYPD TRAINING MATERIALS INTO EVIDENCE AT TRIAL.

Defendants respectfully refer the Court to their motions in limine for a full recitation of our arguments as to why plaintiff should be precluded from referring to or offering the patrol guide or any NYPD training materials into evidence at trial.  Plaintiff's arguments as

---

[6] See also, Whren v. U.S., 517 U.S. 806, 815 (1996) (rejecting Constitutional standard based on "usual police practices," because "police enforcement practices, even if they could be practicably assessed by a judge, vary from place to place and from time to time.  We cannot accept that the search and seizure protections of the Fourth Amendment are so variable.")

12

set forth in his June 15, 2015 motions in limine that these materials should be admitted at trial because: 1) Signorelli relied on them in preparing his expert report and; 2) because they will aid the jury in determining whether the force used against plaintiff was excessive, are equally unavailing.

First, as discussed, supra, Signorelli's testimony should be precluded in its entirety, and thus, the training materials he relied on are likewise inadmissible and impermissible hearsay. Moreover, even assuming, arguendo, that Signorelli is permitted to testify, his report, while referencing "police procedures" and "training" does not contain any reference or citation to the NYPD Patrol Guide or NYPD training materials specifically. Therefore, it is not true that it is necessary that these materials be admitted as evidence because Signorelli relied on them in preparing his report.

Plaintiff also claims that the jury "will not be properly able to evaluate the Defendants' use of force under this standard without a proper understanding of police training and procedures." (Ps Memo at 22.) Plaintiff does not cite to any section of the NYPD Patrol Guide nor to any training material in particular that he believes will shed any light on appropriateness of the "degree of force" used in this particular case, and defendants submit that there is none. It for the jury alone to determine based on the all of the admissible evidence whether the forced used was reasonable and appropriate under the circumstances. Reading excerpts from the patrol guide will not aid in this task.

Any reference to alleged "violations" of the Patrol Guide and/ or NYPD training materials offered to suggest that an officer did not follow those exact guidelines would only serve to confuse the jury. If the jury is presented with portions of the Patrol Guide and or any training materials, it is likely to wrongly assume that the Patrol Guide sets out the standard by

which they are to evaluate the defendants' actions, notwithstanding a contrary instruction from the Court.  In light of the foregoing, any reference to or inquiry regarding the Patrol Guide and/ or any NYPD training materials are irrelevant, unfairly prejudicial, and would only confuse the relevant issues and the jury.  Accordingly, the Patrol Guide should be precluded pursuant to FRE 402 and 403.

## POINT VI

### PLAINTIFF SHOULD BE PRECLUDED FROM CALLING AUDRA STERN, CAMERON STERN, AND IRENE GROSS AS WITNESSES AT TRIAL.

Once again, defendants refer the Court to their June 15, 2015 motions in limine regarding their full arguments seeking to preclude Audra Stern, Cameron Stern, and Irene Gross from testifying at trial.[7,8]

---

[7] Lisa Green-Stark is expected to testify solely regarding chain of custody issues regarding the video discussed in Point II, supra, and which defendants have also moved to preclude, and Thomas Krestos is expected to testify about photographs and videos that defendants have not yet received.  Defendants therefore reserve their right to preclude Thomas Krestos from testifying after such time as those photographs have been received and reviewed.

[8] At this time, defendants do not seek to preclude plaintiff from calling Anthony Stern to testify in this matter.

## CONCLUSION

For the foregoing reasons, defendants George Shammas, Daniel Castillo, Sergio

Bocanumenth, and Denise Shenton respectfully request that the Court deny plaintiff's motions <u>in</u>

<u>limine</u> and grant them any such further relief as the Court deems just and proper.

Dated:    New York, New York
          June 22, 2015

                     ZACHARY W. CARTER
                     Corporation Counsel of the City of New York
                     *Attorney for Defendants Shammas, Castillo,*
                     *Bocanumenth, and Shenton*
                     100 Church Street
                     New York, New York 10007
                     (212) 356-2371/2662

                     By:        /S

                     _____

                     Carolyn K. Depoian
                     Assistant Corporation Counsel

To:    **BY ECF AND EMAIL**
        Andrew St. Laurent, Esq.
        James Valentino, Esq.
        Priya Chaudhry, Esq.
        Harris, O'Brien, St. Laurent & Houghteling LLP
        *Attorneys for Plaintiff*