UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

MITCHELL STERN,

                    Plaintiff,

      -against-

P.O. GEORGE SHAMMAS, P.O. DANIEL
CASTILLO, DEPUTY SHERIFF SERGIO
BOCANUMENTH, and
DEPUTY SHERIFF DENISE SHENTON,

                    Defendants.
---------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-5210 (NGG) (RER)**

**<u>PUBLIC VERSION</u>**
**<u>(REDACTED)</u>**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Mitchell Stern brings this Section 1983 action against two current or former

police officers from the New York City Police Department ("NYPD") and two current or former

deputy sheriffs from the New York City Sheriff's Office[1] (together, "Defendants"), alleging that

Defendants used excessive force in falsely arresting him during an incident that occurred on

December 16, 2009. (See generally First Am. Compl. ("FAC") (Dkts. 42-43).[2]) Trial is

scheduled to begin in this case on July 13, 2015. Pending before the court are the parties'

motions in limine. (See Defs.' Not. of Mot. (Dkt. 107); Pl's Not. of Mot. (Dkt. 110).) For the

reasons set forth below, Defendants' motion in limine is GRANTED IN PART and DENIED IN

PART, and Plaintiff's motion in limine is GRANTED IN PART and DENIED IN PART. In

addition, the court RESERVES JUDGMENT with respect to several issues raised by the parties

until trial.

---

[1] The court has previously dismissed Defendant the City of New York from the case. The Clerk of Court is respectfully directed to amend the case caption to match the caption above.

[2] The FAC was filed under seal, as it contains information regarding Defendant George Shammas's disciplinary history. A redacted version is filed at Dkt. 43.

## I.    LEGAL STANDARD

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." Gorbea v. Verizon N.Y., Inc., No. 11-CV-3758 (KAM), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing Luce v. United States, 469 U.S. 38, 40 n.2 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp., 937 F. Supp. 276, 283 (S.D.N.Y. 1996)). "Evidence should be excluded on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). "[C]ourts considering a motion in limine may reserve decision until trial, so that the motion is placed in the appropriate factual context." Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing Nat'l Union Fire Ins. Co., 937 F. Supp. at 287). Further, a district court's ruling on a motion in limine is preliminary and "subject to change when the case unfolds." Luce, 469 U.S. at 41.

## II.    DISCUSSION

The court addresses in turn each of the parties' requests for admission or exclusion.

### A.    Plaintiff's Proffered Expert Witnesses

The court GRANTS IN PART and DENIES IN PART Defendants' motion to preclude Walter Signorelli from testifying as an expert witness in this case. Mr. Signorelli may testify, but only on the narrowed set of topics described further below. The court GRANTS IN PART and DENIES IN PART Defendants' motion to preclude the expert testimony of Dr. Dominic Pompa, one of Plaintiff's treating physicians. If properly qualified at trial, Dr. Pompa may offer opinion evidence during testimony, but only opinion evidence based on his own treatment of Plaintiff, and not based on the records or conclusions of other doctors.

1.    Walter Signorelli

Federal Rule of Evidence 702, which governs the testimony of expert witnesses, provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Pursuant to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, the court performs a "gatekeeping" role under Rule 702 to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). However, "[e]ven after determining that a witness is 'qualified as an expert' to testify as to a particular matter, and that the opinion is based upon reliable data and methodology, Rule 702 requires the district court to make a third inquiry: whether the expert's testimony (as to a particular matter) will 'assist the trier of fact.'" <u>Nimely v. City of New York</u>, 414 F.3d 381, 397 (2d Cir. 2005). The Second Circuit has cautioned that "expert testimony that usurps either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it by definition does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." <u>Id.</u> (internal citations, quotations marks, and alteration omitted). Even where expert testimony meets the requirements of Rule 702, that testimony is subject to Rule 403's balancing test, and can therefore be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; see also Nimely, 414 F.3d at 397.

Plaintiff proffers Mr. Signorelli as an expert in police procedures, arguing that Mr. Signorelli will aid the jury in understanding police procedures, and how Defendants allegedly violated those procedures during the incident in question. (See Pl.'s Mem. of Law in Supp. of Pl.'s Mot. to Admit Certain Evidence at Trial ("Pl.'s Mem.") (Dkt. 111) at 14-18.) Plaintiff emphasizes Mr. Signorelli's credentials, including 31 years of prior service in the NYPD (including in the roles of Deputy Inspector and Inspector), as well as experience teaching courses in police administration and criminal investigation at local institutions of higher education. (See id. at 15; see also Report & C.V. of Walter Signorelli ("Signorelli Report") (Decl. of Andrew St. Laurent in Supp. of Pl.'s Mot. to Admit Certain Evidence at Trial ("St. Laurent Decl.") (Dkt. 112), Ex. 9 (Dkt. 112-9)).) Indeed, Mr. Signorelli has testified over a dozen times in federal and state courts as an expert on police practices. See, e.g., Vazquez v. City of New York, No. 10-CV-6277 (JMF), 2014 WL 4388497, at *11-14 (S.D.N.Y. Sept. 5, 2014) (denying defendants' motion to preclude report, opinions, and testimony of Mr. Signorelli); Quagliarello v. Dewees, 802 F. Supp. 2d 620, 623-26 (E.D. Pa. 2011) (granting in part and denying in part defendants' motion to preclude Mr. Signorelli's expert testimony). In moving for admission, Plaintiff argues that his expert will help the jury to understand how Defendants violated police procedures, which will in turn inform the jury's analysis of the ultimate issues—whether Defendants had probable cause to arrest Plaintiff, and whether they used excessive force. (Pl.'s Mem. at 17-18.) Defendants counter that Mr. Signorelli's opinions invade the fact-finding province of the jury; Mr. Signorelli failed to use a reliable methodology to reach his conclusions; and, in any event, Mr. Signorelli's testimony is irrelevant, prejudicial to

4

Defendants, and likely to confuse the jury. (See Defs.' Mem. of Law in Supp. of Defs.' Mots. in Limine ("Defs.' Mem.") (Dkt. 109) at 15-30.)

Defendants' motion to preclude Mr. Signorelli's expert testimony is GRANTED IN PART and DENIED IN PART. As an initial matter, the court rejects Defendants' argument that Mr. Signorelli's opinions lack a reliable methodology, and that he fails to support his conclusions with a traceable analysis. (See Defs.' Mem. at 25-28.) It is well-settled that an expert's opinions may be properly based on personal experience rather than traditional scientific methods. See Vazquez, 2014 WL 4388497, at *12 (admitting Mr. Signorelli's opinions where they were based on "personal experience, interviews, review of police manuals and other primary sources, and review of academic literature"); see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999) (explaining that expert testimony may be based on personal knowledge or experience). Here, the Signorelli Report demonstrates that Mr. Signorelli has the professional experience necessary to opine as an expert on certain matters (discussed in more detail below), and that he reached his opinions based on such experience. (See Signorelli Report at ¶¶ 2-3, 10.) If Defendants view Mr. Signorelli's qualifications or methodology as weak, they may question him on these issues during cross-examination. See, e.g., Cerbelli v. City of New York, No. 99-CV-6846 (ARR) (RML), 2006 WL 2792755, at *7 (E.D.N.Y. Sept. 27, 2006) ("All of the points raised in the police defendants' papers—i.e., that [the expert] did not rely on any empirical data and has no experience or training in the field of police practices and procedure—are fair ground for cross-examination. These are questions of weight, not admissibility."); see also Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Next, the court must determine the proper scope of Mr. Signorelli's expert testimony. Defendants are correct that Mr. Signorelli cannot testify as an expert regarding certain matters. First, he cannot offer legal conclusions. (See, e.g., Signorelli Report at ¶ 13 (opining that arrest of Plaintiff was not justified by Criminal Procedure Law § 140.50).) See Valentin v. New York City, No. 94-CV-3911 (CLP), 1997 WL 33323099, at *24 (E.D.N.Y. Sept. 9, 1997) ("[T]estimony that embraces an ultimate issue should not be admitted when it contains a legal conclusion that 'convey[s] the witness's unexpressed, and perhaps erroneous, legal standards to the jury.'" (quoting Andrews v. Metro N. Commuter R.R. Co., 882 F.2d 705, 709 (2d Cir. 1989))). This includes any opinions that the force used by Defendants was "unreasonable" or that Defendants lacked probable cause to make an arrest. See Hygh v. Jacobs, 961 F.2d 359, 364 (2d Cir. 1992) (disapproving of expert testimony in false arrest and excessive force case that officer's conduct was not "justified under the circumstances"); Giles v. Rhodes, No. 94-CV-6385 (CSH), 2000 WL 1425046, at *18 (S.D.N.Y. Sept. 27, 2000) (precluding expert in excessive force case from testifying that defendant-officers "acted properly").

Second, Mr. Signorelli cannot make credibility determinations. (See, e.g., Signorelli Report ¶ 14 ("Shammas'[s] explanation for the arrest, 'I was not going to let him go into his house to get a weapon and be a barricaded EDP [Emotionally Disturbed Person]' does not appear reasonable on the basis of these circumstances.").) See Nimely, 414 F.3d at 398 ("[T]his court, echoed by our sister circuits, has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702."); Fate v. Vill. of Spring Valley, No. 11-CV-6838 (JPO), 2013 WL 2649548, at *6 (S.D.N.Y. June 13, 2013) (precluding expert on police practices to "offer testimony about what he believes actually happened or about the credibility of any witness").

6

Third, Mr. Signorelli cannot offer any opinions concerning Shammas's motives, intent, or state of mind. (See, e.g., Signorelli Report ¶ 15 ("[Shammas's] statement . . . indicates that the reason for the arrest was not obstructing governmental administration but Shammas'[s] concern that a civilian complaint against him would affect his employment status.").) See, e.g., In re Rezulin Prods. Liability Litig., 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.").

Fourth, in responding to Defendants' legal arguments for preclusion, Plaintiff has listed a number of potentially relevant areas to which Mr. Signorelli may testify at trial. (See Pl.'s Reply Mem. of Law in Opp'n to Defs.' Mots. in Limine ("Pl.'s Reply") (Dkt. 121) at 11-12.) However, to the court's knowledge, Plaintiff did not include many of these subject areas in his expert disclosure under Federal Rule of Civil Procedure 26(a)(2)(B), and it does not appear that he ever supplemented the disclosure under Rule 26(e). Accordingly, the following topics listed in Plaintiff's Reply may be improper subjects of Mr. Signorelli's testimony: the powers and duties of the New York City Sheriff's Department and the interplay between this department and the NYPD; the role of a sergeant in arrests and whether there is a specific protocol with respect to arresting former City employees such as Plaintiff; NYPD policy regarding an officer's use of profanity towards a civilian; and NYPD procedures regarding detention of citizens prior to arrest. See Fed. R. Civ. P. 26(a)(2)(B) ("The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them . . . ."); Fed. R. Civ. P. 37(c)(1) (authorizing court to preclude party that fails to comply with Rule 26(a) or Rule 26(e) from using at trial the information that it previously failed to disclose); In re Kreta Shipping, S.A., 181 F.R.D. 273, 277-78 (S.D.N.Y. 1998) (discussing interplay between Rule 26(a) and Rule 37(c), and availability of sanctions, including preclusion).

Preclusion of the topics or opinions that the expert failed to timely disclose may be an appropriate sanction here, particularly since the expert opinions that are most relevant to Plaintiff's claims would not be precluded. See, e.g., LaSalle Bank N.A. v. CIBC Inc., No. 08-CV-8426 (WHP) (HBP), 2012 WL 466785, at *9 (S.D.N.Y. Feb. 14, 2012) ("The expert's report operates to limit the scope of the testimony that can be elicited from the expert. Opinions that are not disclosed in the expert's report cannot be offered."). However, the court lacks an adequate basis to determine at this time whether to preclude these opinions; for example, Plaintiff has not provided an explanation for his failure to comply with the disclosure requirement, and Defendants have not stated whether they would be prejudiced as a result of having to prepare to address the new testimony. See Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006). Should Plaintiff still seek to offer Mr. Signorelli's undisclosed opinions as evidence at trial, he must immediately inform Defendants (to the extent they are not already on notice), and must explain to the court why preclusion of the opinions is not the appropriate sanction. If Plaintiff makes such an application to the court, Defendants shall have an opportunity to respond.

Which of Mr. Signorelli's opinions remain? In short, Mr. Signorelli may offer his opinions regarding generally accepted police standards and whether Defendants deviated from such standards.[3] (See, e.g., Signorelli Report ¶ 11 ("In my opinion, it was a violation of the standards of proper police procedure and practices for Officers Shammas and Castillo to have arrested Mr. Stern . . . ."); id. ¶ 18 ("Officers are trained to use 'continuum of force' procedures, meaning that, when possible, an officer should try to persuade a suspect to submit to handcuffing before resorting to force.").) To avoid making improper credibility determinations, however,

---

[3] Defendants do not argue that expert testimony on these matters is inappropriate where there is no viable Monell claim, and indeed, similar expert testimony has been allowed even in cases lacking a Monell claim against a municipal defendant. See Vazquez, 2014 WL 4388497, at *13 n.5 (collecting cases).

Mr. Signorelli must explain that his opinions assume certain facts to be true. See, e.g., Fate, 2013 WL 2649548, at *6 ("[The] expert testimony on the reasonableness of the police practices in this case must be expressly characterized as based on the assumption that certain facts are found to be true . . . ."). (See also Pl.'s Reply at 11 ("If permitted, Signorelli will testify . . . by answering a series of hypotheticals, assuming certain facts to be true . . . .").) In addition, if qualified based on his professional experience to offer opinions on such matters, Mr. Signorelli can explain to the jury the definition of an EDP, and generally accepted police procedures regarding EDPs, as well as the meanings of the various levels of NYPD discipline.[4]

Finally, the court determines that the narrow set of opinions discussed above are likely to aid the jury, and their probative value is not substantially outweighed by any potential unfair prejudice to Defendants, particularly in tandem with an appropriate limiting instruction. See Vazquez, 2014 WL 4388497, at *13 ("Police training, policies, and procedures—the subjects of Signorelli's testimony—are '[c]learly . . . complex areas outside common experience.'" (quoting Cerbelli, 2006 WL 2792755, at *8)).

### 2. Dr. Dominic Pompa

Dr. Pompa has served as Plaintiff's treating physician for over 10 years, and has examined him at least 100 times, including before and after the incident in question. (See Pl.'s Mem. at 18-19; Mar. 12, 2014, Report of Dr. Pompa ("Pompa Report") (St. Laurent Decl., Ex. 10 (Dkt. 112-10)).) Plaintiff seeks to qualify Dr. Pompa as an expert so that Dr. Pompa can opine on the causes and severity of Plaintiff's injuries; in the alternative, Plaintiff seeks to apply Second Circuit precedent that allows a treating physician, although not necessarily offered as a traditional expert witness under Federal Rule of Civil Procedure 26, to testify about causation. Defendants move to preclude Dr. Pompa's expert testimony, but concede that he may testify

---

[4] See infra Part II.C.1.

regarding facts obtained during his treatment and diagnoses of Plaintiff, of which he has personal knowledge. (Defs.' Mem. at 31-32.) Defendants also argue that the Pompa Report fails to comply with Rule 26(a)(2)(C), and that his expert opinion should therefore be precluded on that basis. (Id. at 30.)

Based on a review of the Pompa Report and an excerpt of the deposition of Dr. Pompa (See Tr. of Dep. of Dominic Pompa ("Pompa Dep.") (Decl. of Carolyn K. Depoian in Supp. of Defs.' Mots. in Limine ("Depoian Decl.") (Dkt. 108), Ex. G (Dkt. 108-7))), the court concludes that Dr. Pompa cannot testify as a Rule 26 expert witness in this case. In particular, the court is concerned that with respect to the Pompa Report, Dr. Pompa testified during his deposition that he drafted it based on a single conversation with Plaintiff, and that he "[knew] very little about what happened [to Plaintiff] other than a very brief narrative." (Pompa Dep. at 10:1-23, 15:1-16:25.)

With respect to Dr. Pompa's testimony as a treating physician, the court adopts the thorough analysis and framework contained in Spencer v. International Shoppes, Inc., No. 06-CV-2637 (AKT), 2011 WL 4383046 (E.D.N.Y. Sept. 20, 2011), and reiterates several tenets contained in that opinion. First, because Dr. Pompa will testify solely in his capacity as Plaintiff's treating physician, he was not required to provide an expert disclosure under Rule 26. See Spencer, 2011 WL 4383046, at *2 (collecting cases and noting that "[i]t is well settled that treating physicians can be deposed or called to testify at trial without the requirement of a written report" (internal quotation marks and citation omitted)); Monroe-Trice v. Unum Emp. Short-Term Disability Plan, No. 00-CV-6238 (JGK) (MHD), 2003 WL 68033, at *1 (S.D.N.Y. Jan. 8, 2003) ("Rule 26(a)(2)(B) does not require a treating physician to provide a report as a predicate to testifying for his patient."). Second, because he is a treating physician, Dr. Pompa's

testimony need not be constrained to solely factual testimony. See Spencer, 2011 WL 4383046, at *3 ("[C]ourts in this Circuit have commented that a treating physician cannot be limited to solely factual testimony."). In other words, Dr. Pompa may provide opinions regarding, among other issues, causation and the course of his treatment of Plaintiff, if he qualifies to provide such opinions under Federal Rule of Evidence 702. See id. But even where Dr. Pompa "is permitted to provide expert testimony in his own right with regard to causation, his testimony must nonetheless be limited to and based upon the information that he has acquired in his role as a treating physician." Id. at *4 (emphasis added).

Thus, Dr. Pompa may testify at trial concerning his opinion of what has caused Plaintiff's injuries, but only if such testimony is based on information he acquired through observation of Plaintiff in his role of treating physician—and not based on other physicians' observations. See id. ("Plaintiff's counsel is cautioned that the physician at issue can testify only to his/her own course of treatment of the Plaintiff. The treating physician may not introduce information provided by other physicians to whom the Plaintiff may have been referred nor may the doctor present any medical reports received from other physicians regarding the Plaintiff or opine on any information provided by another doctor.").

At bottom, Defendants appear to argue that as a general practitioner, Dr. Pompa simply is not qualified "to testify . . . about [P]laintiff's complex neurological medical condition, nor about the causal relationship between this incident and [P]laintiff's pre-existing neurological injuries with the requisite 'knowledge, skill, experience, training, or education' required by [Rule] 702." (Defs.' Mem. at 31.) Defendants further argue that Dr. Pompa's deposition testimony makes clear that he did not acquire any personal knowledge of the December 16, 2009, incident through his treatment of Plaintiff. (Defs.' Mem. of Law in Opp'n to Pl.'s Mots. in Limine ("Defs.'

Reply") (Dkt. 119) at 9-10.) The court RESERVES JUDGMENT until trial regarding whether Dr. Pompa is qualified to testify on such matters. If Plaintiff fails to lay a proper foundation concerning Dr. Pompa's basis for his opinions, his testimony will be limited to the actual course of treatment of Plaintiff, and Dr. Pompa will not be permitted to make statements of opinion concerning whether the December 16. 2009, incident caused or exacerbated Plaintiff's pre-existing impairments.[5]

### B. NYPD Patrol Guide

The court RESERVES JUDGMENT on Defendants' motion to preclude admission of NYPD patrol guides and training materials, which Plaintiff seeks to admit in connection with Mr. Signorelli's expert testimony, see supra Part II.A.1. Given that Mr. Signorelli will testify concerning generally accepted police practices, the court is not convinced that the NYPD materials themselves will be of much probative value, and is concerned that their admission may confuse the issues, mislead the jury, and waste time. See Fed. R. Evid. 403. (See also Pl.'s Reply at 18 (acknowledging precedents excluding police procedures and training materials in civil rights cases).) However, the court has yet to review the actual materials that Plaintiff seeks to admit, and therefore reserves judgment until trial.

### C. Admissibility of Officer Shammas's Disciplinary History

The court previously granted Defendants' motion for summary judgment on Plaintiff's Monell claim against the City of New York (the "City"). (See May 21, 2015, Mem. & Order ("Monell Decision") (Dkt. 100).) The court assumes familiarity with the Monell Decision, in which it discussed at length the prior disciplinary history of Defendant George Shammas. (See generally id. at 1-13.) In opposition to Defendants' motion for partial summary judgment,

---

[5] The court notes that based on the parties' proposed joint pre-trial order, it appears that Plaintiff also intends to call his treating neurologist to testify as an expert witness regarding these very issues. Defendants have not moved to preclude such testimony.

Plaintiff introduced Shammas's disciplinary history in an attempt to show that the City's failure to appropriately discipline him for prior misconduct illustrated its deliberate indifference to the violation of Plaintiff's constitutional rights. Ultimately, the court granted Defendants' motion for partial summary judgment, holding that a reasonable jury could not find that in this case, the City acted with deliberate indifference. (Id. at 17-18, 21-25.)

Now, Plaintiff seeks to introduce at trial Shammas's disciplinary history in connection with Plaintiff's claims against the individual Defendants, including Shammas. (See Pl.'s Mem. at 2-11.) First, Plaintiff argues that the disciplinary history is admissible under Federal Rule of Evidence 404(b), as it goes to intent and motive, and because it "completes the narrative" regarding the incident at issue. (See id. at 6-10.) Second, Plaintiff argues that if, as expected, Shammas testifies, Plaintiff should be permitted under Federal Rule of Evidence 608(b) to cross-examine Shammas█████████████████████████████████████████ as this concerns Shammas's character for truthfulness or untruthfulness. (See id. at 10-11.) Defendants oppose on both grounds, and argue that even if Plaintiff can meet the requirements of either Rule 404(b) or Rule 608(b), the probative value of the evidence is outweighed by potential unfair prejudice to Defendants. (See Defs.' Mem. at 5-10.) Plaintiff's motion to admit the evidence is GRANTED IN PART and DENIED IN PART.

> 1.     Rule 404(b)(2)

The court will admit certain evidence related to Shammas's disciplinary record under Rule 404(b)(2), which provides that evidence of other acts is admissible for a purpose other than proving a person's character, including to show that person's motive or intent. See, e.g., Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991) (affirming district court analysis that prior complaints to Civilian Complaint Review Board ("CCRB") may have had some probative

value in establishing defendant-officer's motive to make a pretextual arrest, but that in this particular case, the probative value was outweighed by potential prejudice). Plaintiff has represented that witnesses will testify that before the arrest occurred, Plaintiff asked Shammas for his name and badge number, and insinuated that he would report Shammas for his (to that point in the incident) disrespectful behavior and profane language. (See Pl.'s Mem. at 6-7.) Witnesses are also expected to testify that Shammas responded by stating something along the lines of, "I got to lock this guy up to protect myself," and then proceeded to arrest Plaintiff. (See id.) Thus, taken in connection with such testimony, a jury could view the fact that ███████████████████████████████████████████████ as probative of his intent upon arresting Plaintiff and engaging in the use of force. See, e.g., Lewis v. City of Albany Police Dep't, 547 F. Supp. 2d 191, 200-01 (N.D.N.Y. 2008) (admitting evidence of prior complaints against defendant-officer to show, among other things, officer's intent), aff'd, 332 F. App'x 641 (2d Cir. 2009) (summary order); see also Ismail v. Cohen, 899 F.2d 183, 188 (2d Cir. 1990) (affirming admission of "other acts" evidence in civil rights case against police officer).

Here, and unlike in Berkovich, where the officer was exonerated of six of the seven CCRB complaints the plaintiff unsuccessfully sought to introduce pursuant to Rule 404(b), ████████████████████████████████████████████████████████████████ ████████████████████████████████[6] In addition, Plaintiff does not merely speculate about

---

[6] The court in Berkovich also noted that the plaintiff had failed to show that the other acts evidence should have been admitted to establish a pattern of conduct, or a "modus operandi." As they did in their motion for summary judgment on the Monell claim, Defendants focus on the fact that Shammas's prior incidents differ in certain ways from his incident with Plaintiff—for example, none of the prior incidents involved an actual arrest or the use of direct physical force. (See Defs.' Mem. at 7 ("Here, while defendant George Shammas's disciplinary history with the NYPD concededly contains ████████████████████████████████████████████████████ ████████████████████████████████ his disciplinary record nonetheless does not involve any physical force or false arrest scenarios . . . .").) But Plaintiff does not seek to admit the prior incidents to show a modus

14

Shammas's prior conduct █████████████████████ rather, Plaintiff received the

disciplinary records during discovery and deposed Shammas regarding the discipline. Indeed,

the court itself has already reviewed the full disciplinary records in connection with Defendants'

motion for partial summary judgment. Cf. Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529,

555-56 (E.D.N.Y. 2011) (precluding admission of other acts evidence where plaintiff failed to

provide to the court information about past CCRB complaints, and finding in any event that

admission would be prejudicial, as the purported CCRB complaints were unsubstantiated);

Banushi v. Palmer, No. 08-CV-2937 (KAM) (JO), 2011 WL 13894, at *2 (E.D.N.Y.

Jan. 4, 2011) (precluding admission of disciplinary records for purpose of showing pattern of

relevant conduct where "plaintiff provide[d] no details to the court about the nature or content of

the records at issue"), aff'd, 500 F. App'x 84 (2d Cir. 2012) (summary order).

Next, the court must consider whether it should nevertheless exclude the proffered

evidence of motive or intent under Rule 403's balancing test. The court concludes that certain of

the information is probative of Plaintiff's claims and presents a low risk of unfair prejudice to

Defendants, while the admission of other information contained in the disciplinary records would

be unfairly prejudicial to Defendants. What is most probative of Shammas's motive is the fact



---

operandi or pattern of conduct, in which case the similarity of the prior acts would be a key inquiry under
Rule 404(b). Defendants' argument in this respect is therefore largely irrelevant. (See id. at 6-7 (citing case law and
analyzing modus operandi holdings, but not motive or intent holdings).)

In his motion in limine, Plaintiff did not discuss in detail the specific evidence of other acts that he seeks to admit under Rule 404(b). The court provides the following framework for the admission of evidence at trial related to Shammas's prior conduct:

- Plaintiff may refer to the fact that Shammas was ████████████████ ████████ and elicit oral testimony regarding the meaning of these █████ ████████ (See, e.g., Tr. of Dep. of George Shammas (St. Laurent Decl., Ex. 1 (Dkt. 112)) at 129:4-9 (Q: "██████████████████████████ ████████████████"); Signorelli Report ¶ 15).)

- Plaintiff may elicit oral testimony concerning the general facts that (see Monell Decision at 4-7), and ████████████████████████████████ ████████████████████████████ (see id. at 8-10). If they so choose, Defendants may elicit testimony concerning ████████████████ ████████████████████ (See id. at 9-10.) Similarly, Plaintiff may elicit testimony that ████████ before Shammas's incident with Plaintiff. (See id.)

- If Plaintiff anticipates using any exhibits in connection with the oral testimony discussed above, he must first seek court approval of the exhibit, and must redact any extraneous or prejudicial information.

Any potential prejudice with respect to this evidence can be mitigated by a proper limiting instruction to the jury. See Lewis, 547 F. Supp. 2d at 200 ("The substantial probative value of the relevant prior complaints is not substantially outweighed by the speculative danger of unfair prejudice, particularly given the limiting instructions to the jury.").

Plaintiff, however, is precluded from offering the following evidence, which lacks significant probative value, and for which the risk of substantial unfair prejudice to Defendants is high:

-  (See <u>Monell</u> Decision at 6.)

- 

### 2.    Rule 608(b)(1)

Plaintiff also moves to admit under Rule 608(b)(1) certain evidence from Shammas's disciplinary record during cross-examination of Shammas. "Under Rule 608(b), the court has discretion to permit or deny a line of inquiry on cross-examination." <u>United States v. Cruz</u>, 894 F.2d 41, 43 (2d Cir. 1990). Several courts have precluded cross-examination regarding prior, substantiated instances of officer misconduct. <u>See, e.g.</u>, <u>United States v. Horsford</u>, 422 F. App'x 29, 30 (2d Cir. 2011) (summary order) (precluding cross-examination regarding CCRB complaint in which "the underlying conduct involved no dishonesty"); <u>United States v. Barret</u>, No. 10-CR-809 (KAM), 2012 WL 194992, at *1-2 (E.D.N.Y. Jan. 23, 2012) (precluding cross-examination concerning several substantiated complaints, including prior false arrest, and refusal to provide name and badge upon request, because the complaints did "not involve conduct that bears on credibility"); <u>United States v. Stone</u>, No. 05-CR-401 (ILG), 2007 WL 4410054, at *1 (E.D.N.Y. Dec. 14, 2007) (precluding cross-examination regarding unsubstantiated CCRB complaints).

Plaintiff has not indicated whether he seeks to admit the evidence in question separately under Rule 608(b), where the court has already determined that portions of the records are relevant, probative evidence of his claims under Rule 404(b);[7] nor has Plaintiff identified any case(s) in which a witness's failure to report a prior, work-related incident qualified as a specific instance of conduct probative of the witness's character for untruthfulness. See, e.g., Stone, 2007 WL 4410054, at *1 ("If all that can be said about behavior is that it might be called improper, immoral, or unlawful[,] asking about it cannot be justified under [Rule] 608." (alteration omitted)). The court therefore DENIES this portion of Plaintiff's motion; if Plaintiff wishes to make an argument to the jury concerning Shammas's character for truthfulness, he must first seek court permission, and explain the alleged basis for such argument.

### D. Plaintiff's Proffered Fact Witnesses

Defendants seek to preclude the testimony of several fact witnesses, each discussed in turn below.

#### 1. Audra and Cameron Stern

On the morning of the incident, Plaintiff's wife (Audra), daughter (Cameron), and son (Anthony) were all at home.[8] (See Pl.'s Mem. at 23-24.) Plaintiff argues that his family members "are pivotal trial witnesses because [they] observed a significant part(s) of the incident, such as: Shammas's obscenities towards Plaintiff, Shammas's statement prior to arresting Stern, Defendants' use of excessive force against Stern on his front stoop, and the location of Stern's vehicle once Defendants Shammas and Castillo arrived at the scene." (Id. at 23.)

---

[7] For example, it is unclear whether Plaintiff plans to argue during summation that the jury should find Shammas's entire testimony incredible based on ██████████████████████████████████████████

[8] Although the heading in the Table of Contents preceding Defendants' opening brief lists all three members of Plaintiff's family (see Defs.' Mem. at I), Defendants have now made clear that they do not move to preclude the testimony of Anthony Stern (see Defs.' Reply at 14 n.8).

Defendants argue that Audra Stern lacks personal knowledge to testify about the December 16, 2009, incident, and they point to a statement she made to the CCRB on January 22, 2010, in which she stated that she was sleeping when the incident began, and only observed Defendants after they had already arrested Plaintiff. (See Defs.' Mem. at 11-12; CCRB Interview of Audra Stern (Depoian Decl., Ex. B (Dkt. 108-2)).) In her statement to the CCRB, however, Audra Stern also stated that she was awakened by somebody saying "I got to lock this guy up to protect myself." (CCRB Interview of Audra Stern at 2:10-12.) While the transcript makes clear that Audra Stern did not witness the entire incident, Defendants' argument that she will be unable to provide any relevant testimony based on personal knowledge is hyperbolic. In addition, Audra Stern may be able to testify about the physical and emotional damages that Plaintiff alleges occurred as a result of the incident. (See Pl.'s Reply at 6 & n.5.) Accordingly, Defendants' motion to preclude Audra Stern's testimony is DENIED.[9]

Next, Defendants argue that Cameron Stern also lacks personal knowledge of Plaintiff's interaction with Defendants, and, because she was only seven years old at the time of the incident, any testimony she provides is likely to be tainted either by her father's influence during the intervening years or the initial trauma of observing her father's arrest. (See Defs.' Mem. at 12.) The court lacks a sufficient basis at this time to resolve the motion to preclude Cameron Stern's testimony, and therefore RESERVES JUDGMENT until trial. If Plaintiff can demonstrate that Cameron Stern has personal knowledge of the incident and is competent to understand the oath and to testify, the court will permit her to testify.

---

[9] Of course, as with all witnesses, Plaintiff must lay a proper foundation for Audra Stern's testimony, and Defendants are permitted to object to particular lines of questioning as the testimony proceeds.

### 2. Irene Gross

Irene Gross was Plaintiff's neighbor at the time of the incident. (See Pl.'s Mem. at 23; Pl.'s Reply at 7.) Defendants argue that, like Audra Stern, Ms. Gross lacks personal knowledge of the incident. (See Defs.' Mem. at 12-13.) Defendants point to Plaintiff's deposition, in which he testified that Ms. Gross (and her husband) previously told Plaintiff that they saw his vehicle get towed to the end of the block before the NYPD officers arrived, but that he did not know whether Ms. Gross and her husband actually saw Defendants arrest him. (Tr. of Dep. of Mitchell Stern (Depoian Decl., Ex. A (Dkt. 108-1)) at 268:7-20.) Defendants also argue that a written statement from Ms. Gross to Plaintiff's criminal defense attorney is inadmissible hearsay. (See Nov. 5, 2010, Ltr. from Irene Gross to Lyssa [sic] Green-Stark, Esq. (Depoian Decl., Ex. D (Dkt. 108-4)).)

The court GRANTS IN PART and DENIES IN PART Defendants' motion. Although it appears that Ms. Gross's testimony will be quite limited in scope, there is no basis to preclude her from testifying about what she does recall based on her personal knowledge. Defendants, however, are correct that the letter from Ms. Gross to Plaintiff's criminal defense attorney is inadmissible hearsay.

### 3. Thomas Kretsos

Plaintiff intends to call as a fact witness Thomas Krestos, a private investigator that Plaintiff previously hired. (Pl.'s Mem. at 24-25.) Defendants appear to object to the testimony only to the extent that they have been unable to review certain photographs taken by Mr. Krestos that Plaintiff intends to introduce as exhibits. (See Defs.' Reply at 14 n.7; see also Jt. June 19, 2015, Ltr. (Dkt. 117) (explaining that Defendants will review the Krestos photographs on July 2, 2015, and thereafter notify the court of any remaining objections).) The court

therefore RESERVES JUDGMENT until after Defendants review the Krestos photographs and have an opportunity to raise any specific objections to their introduction as evidence.

### E. Plaintiff's Photographs of the Scene of the Incident

In addition to the Krestos photographs (see supra Part II.D.3), Defendants object to the introduction of three black-and-white photographs (Plaintiff's proposed exhibits 35, 36, and 37), arguing that they are blurry, of limited probative value, and intended merely to invoke the sympathy of the jury. (Defs.' Mem. at 14-15.) Plaintiff cursorily argues that the photographs are relevant and probative, although it is not entirely clear whether Plaintiff is discussing the same photographs as Defendants. (Pl.'s Reply at 8.) The court therefore RESERVES JUDGMENT until it has an opportunity to review the photographs before they are offered into evidence at trial.

### F. Video of Towing of Plaintiff's Vehicle and Spoliation Motion

Plaintiff seeks to admit a thirty-second video recording of the towing of his vehicle. (See Pl.'s Reply at 7-8; Defs.' Mem. at 13-14.) Defendants argue that the video was taken prior to the time the NYPD officers arrived at the scene (although they do not state whether Deputy Sheriffs Bocanumenth and Shenton were present at the time of filming), and that the recording has no probative value and is likely to mislead the jury. (Defs.' Mem. at 13-14.) Plaintiff counters that the recording has "'obvious probative value,'" because it "shows the license plate of a car with no outstanding tickets being towed, which explains why [Plaintiff] told the sheriffs that his car should not be towed." (Pl.'s Reply at 7 (quoting Amnesty of Am. v. Town of W.

Hartford, 361 F.3d 113, 119 n.2 (2d Cir. 2004)).) Plaintiff's motion to admit the video recording is GRANTED.[10]

Plaintiff also moves for an adverse inference instruction concerning the video recording, arguing that the thirty seconds that were preserved depict only the beginning of the incident, and that the remainder of the recording was spoliated by the individual Defendants or by the City. (See Pl.'s Mem. at 13-14.) Defendants oppose, arguing that Plaintiff fails to meet any of the elements necessary for a spoliation sanction. (See Defs.' Reply at 4-9.) Plaintiff's motion for an adverse inference instruction is DENIED.

Where a party seeks an adverse inference instruction based on spoliation of evidence, it must show: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). In the Second Circuit, mere negligence can satisfy the culpability element. Id. (citing Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002)). "When evidence is destroyed in bad faith (i.e., intentionally or willfully), that fact alone is sufficient to demonstrate relevance. By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions." Id.

A bit of background regarding the video in question is warranted. According to Plaintiff, a City policy required the recording of all interactions between deputy sheriffs and the owner of a vehicle due to be towed, and that such recordings be subsequently stored in a locked cabinet in

---

[10] The court therefore also GRANTS Plaintiff's motion to call Lissa Green-Stark as a witness, who Plaintiff represents will provide testimony regarding chain-of-custody issues related to the video. (See Pl.'s Mem. at 24; Defs.' Reply at 14 n.7.)

the "Sheriff Videotape Library Unit." (Pl's Mem. at 12; see also Scofftow Videocamera Procedure (St. Laurent Decl., Ex. 4 (Dkt. 112-4)).) A video operator, who was employed by the third-party towing company, declared that she complied with the policy during the towing of Plaintiff's vehicle, and that she recorded all events that occurred in connection with the tow, including Plaintiff's interactions with the deputy sheriffs and NYPD officers. (See Decl. of Nicole Sawler (St. Laurent Decl., Ex. 5 (Dkt. 112-5)).) As part of the criminal case stemming from Plaintiff's arrest (before the charges against him ultimately were dropped), Plaintiff issued a subpoena to the New York City Department of Finance for the recording. (See Pl.'s Mem. at 12; Pl.'s Reply at 8 & n.8.) In response to the subpoena, the City produced a VHS recording to Lissa Green-Stark, Plaintiff's criminal defense attorney; Defendant Deputy Sheriff Bocanumenth personally delivered the video to Ms. Green-Stark. (Pl.'s Reply at 8.) That recording included only thirty seconds of footage (discussed supra), with the remainder of the tape completely blank. (Pl.'s Mem. at 12.) Plaintiff subsequently submitted the VHS tape to Edward J. Primeau, a purported expert in audio and video forensics, who concluded "beyond a reasonable degree of scientific certainty that [the] tape is a portion of a longer recording," and that "the remainder of the tape . . . appears to have been erased." (May 15, 2014, Ltr. from Edward J. Primeau (St. Laurent Decl., Ex. 8 (Dkt. 112-8)) at 2-3, 10.)

Plaintiff argues that a spoliation instruction is appropriate. In his view: (1) Defendants had an obligation to preserve the video, both under the Department of Finance policy and because it was relevant to Plaintiff's criminal case (and later his civil case); (2) the timing of the destruction (during the pendency of the criminal case and while ████████████████████ ████████████████████) demonstrates intentional destruction; and (3) even if the destruction were the result of mere negligence, the portion of the video that was erased—according to

Plaintiff, the entire incident surrounding the towing of his vehicle and his subsequent arrest—is highly relevant to Plaintiff's claims. (See Pl.'s Mem. at 13.)

Defendants oppose Plaintiff's request, arguing that: (1) Plaintiff fails to show that the individual Defendants (as opposed to the City) exercised control over the recording; (2) Plaintiff has failed to garner any actual proof that the individual Defendants acted with a culpable state of mind, and relatedly, if the destruction was the result of negligence, Plaintiff has failed to show that it was the individual Defendants' negligence as opposed to that of a third-party or the City; and (3) Plaintiff has failed to demonstrate that the missing footage would have been favorable to him, as opposed to Defendants. (Defs.' Reply at 4-8.) In addition, Defendants argue that a spoliation instruction is inappropriate where the party seeking the instruction fails to show prejudice, and where live witnesses will testify at trial regarding the actual events that are purportedly missing from the recording. [11] (Id. at 5, 9.)

"The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) (internal citations omitted). Here, an adverse inference instruction is not appropriate. Although the missing footage (if it ever existed) may have supported Plaintiff's claims, based on the record before the court, it is equally likely that the footage would not have supported Plaintiff's claims. See, e.g., McGinnity v. Metro-N. Commuter R.R., 183 F.R.D. 58, 63 (D. Conn. 1998) (declining to give adverse inference instruction where "all parties [were] equally prejudiced by the absence of the tape recording" and "complete discovery [was] conducted by all parties in the absence of the tape recording"). Moreover, Plaintiff has failed to show that the original recording was in the custody or control of

---

[11] The court has also considered the additional arguments raised by the parties in their subsequent letters regarding this issue. (See Pl.'s June 24, 2015, Ltr. (Dkt. 124); Defs.' June 25, 2015, Ltr. (Dkt. 126).)

the individual Defendants, or that the individual Defendants acted intentionally or negligently to destroy the footage. An adverse inference instruction would be unfair where some third-party, rather than the defendants at trial, caused the erasure. In this regard, Plaintiff argues that the City was a former Defendant in this case, and may have caused the spoliation. However, he fails to identify any case(s) where an adverse inference instruction was given at trial based on the actions of a prior defendant or non-party.[12] See, e.g., Parlin v. Cumberland Cnty., No. 08-CV-186 (GZS), 2009 WL 2998963, at *2 (D. Me. Sept. 16, 2009) (declining to give spoliation instruction where county defendant was previously dismissed from the case and there was no evidence showing the remaining officer-defendants were involved in the failure to preserve a recording); see also Braham v. Lantz, No. 08-CV-1564 (DFW), 2014 WL 1270096, at *4-7 (D. Conn. Mar. 27, 2014) (no adverse inference instruction where plaintiff failed to show that defendant-officers had control over the unpreserved documents).

The court has already held that the thirty seconds of footage that were preserved are admissible at trial. Plaintiff may introduce testimony at trial concerning the purportedly missing footage (including testimony by a properly qualified expert), but the court will not give an adverse inference instruction to the jury. See, e.g., Calpine Corp. v. AP & M Field Servs., Inc., No. 07-CV-9911 (GEL), 2008 WL 5159775, at *1-5 (S.D.N.Y. Dec. 9, 2008) (Lynch, J.) (declining to give adverse inference instruction, but allowing parties to submit evidence of alleged spoliation to jury). In other words, Plaintiff "is not entitled, on these facts, to have the

---

[12] Plaintiff also argues that Defendants' production of "a substantially identical version of the recording" in the course of this litigation demonstrates that Defendants "control" the recording. (Pl.'s June 24, 2015, Ltr. (Dkt. 124) at 2 & n.1 ("The very fact that the Defendants produced this document and the videotape to Plaintiff is an admission that the Defendants have access to and control over such information.").) But Defendants produced the recording on October 25, 2013 (id. at 2 n.1), well before the court dismissed the City from the case in the Monell Decision. Accordingly, the fact that at one point the recording was produced to Plaintiff in this litigation does not demonstrate that the four remaining individual Defendants exercised control over the video either at the time of production in 2013, or, more significantly for the purposes of a spoliation motion, during the interim between the incident and the production of the thirty-second recording to Plaintiff's criminal defense lawyer in 2010.

Court put its thumb on the scales by directing the jury to draw one conclusion rather than another." Id. at *5. He may bring to the jury's attention that a portion of the recording may be missing, including through expert testimony. But the court will not undermine or supplant through an adverse inference instruction the first-hand recollections provided by the multiple eyewitnesses of the incident who plan to testify at trial.

### G.  Plaintiff's Volunteer Service Following 9/11 Terrorist Attack

Defendants move to preclude Plaintiff from testifying that he volunteered in the aftermath of the September 11, 2011, terrorist attack, claiming that such testimony would be unduly prejudicial under Federal Rule of Evidence 403. (Defs.' Mem. at 10-11.) Plaintiff responds that he "should not be precluded from testifying how and to what extent he was injured, simply because it occurred while volunteering on September 11, 2001, and because of Defendants' fear of prejudice." (Pl.'s Reply at 5-6.) Plaintiff further argues that any potential prejudice can be mitigated through an appropriate limiting instruction to the jury. (Id. at 6.)

Defendants' motion to preclude any reference to the September 11 attack is DENIED. See Int'l Bus. Machine Corp. v. BGC Partners, Inc., No. 10-CV-128 (PAC), 2013 WL 1775437, at *7-8 (S.D.N.Y. Apr. 25, 2013) (explaining that in the immediate aftermath of the attack, some courts excluded references to it "where the references related only to a 'collateral issue' that was 'irrelevant,'" but, a decade after the attack, admitting evidence related to loss of business records previously maintained at the World Trade Center (quoting Zupulake v. UBS Warburg LLC, 382 F. Supp. 2d 536, 548 (S.D.N.Y. 2005))). Here, Plaintiff does not seek to introduce collateral evidence; rather, he seeks to explain to the jury his pre-existing medical conditions, which is likely necessary to prove both causation and damages. Accordingly, the court will allow

Plaintiff to refer to the September 11 attack. As testimony unfolds during trial, the court will, of course, revisit its decision if Plaintiff strays too far afield from the relevant issue.

### H. References to Defense Counsel

Because the City has been dismissed from the case, Defendants request that their counsel be identified simply as "defense counsel" or "attorneys from the Corporation Counsel," but not "the City," "City attorneys," or "Corporation Counsel for the City of New York." (Defs.' Mem. at 32-33.) Plaintiff did not respond to Defendants' request.

Defendants' motion is GRANTED. The court agrees that referring to defense counsel as "City attorneys" could prejudice Defendants, as it may lead the jury to believe that Defendants will be indemnified by the City. See, e.g., Jean-Laurent, 840 F. Supp. 2d at 550 (precluding references to defense counsel as "City attorneys"); Hernandez v. Kelly, No. 09-CV-1576 (TML) (LB), 2011 WL 2117611, at *6 (E.D.N.Y. May 27, 2011) (requiring references to defense counsel as attorneys from "the Office of the Corporation Counsel," and noting that "the jury will be informed that the Corporation Counsel represents members of the New York City Police Department which is an agency of the City of New York"); see also Williams v. McCarthy, No. 05-CV-10230 (SAS), 2007 WL 3125314, at *7 (S.D.N.Y. Oct. 25, 2007) ("It is highly unlikely that the mere mentioning of Corporation Counsel will cause any potential jurors to view the City of New York as a 'deep pocket.' However, to avoid any prejudice whatsoever, I will inform the jury that the defendants are represented by attorneys from the Corporation Counsel because they are members of the New York City Police Department, which is an agency of the City of New York.").

### I. References to Potential Indemnity Arrangements

Relatedly, Defendants seek to preclude Plaintiff from mentioning or offering evidence that the City may indemnify Defendants. (Defs.' Mem. at 33-34.) Plaintiff did not respond directly to Defendants' argument, but argues that indemnification is a proper subject of inquiry if Defendants argue, in connection with the video recording of the tow, that only the City (and not the individual Defendants) had a duty to preserve the potential evidence. (See Pl.'s Reply at 8 n.8; Pl.'s June 24, 2015, Ltr. (Dkt. 124) at 2.)

Defendants' motion is GRANTED. Evidence of the City's potential indemnification of Defendants is not sufficiently relevant to Plaintiff's claims (or to his spoliation argument), and is unfairly prejudicial. See, e.g., Jean-Laurent, 840 F. Supp. 2d. at 550 (precluding admission of evidence related to potential indemnification of defendants); Hernandez, 2011 WL 2117611, at *6 ("Plaintiff shall not mention or introduce evidence of potential indemnification of the individual officers by the City of New York, nor make any argument to the jury of the same."); Williams, 2007 WL 3125314, at *7 ("As for indemnification, plaintiff is precluded from offering any evidence of potential indemnification by the City of New York. Although defendants do not cite any Second Circuit law for this proposition, a number of courts have held that evidence of indemnification is inadmissible."); cf. Fed. R. Evid. 411 (precluding admission of evidence of a defendant's liability insurance in certain circumstances).

### J. Request for Damages

Finally, Defendants move to preclude any suggestion to the jury by Plaintiff's counsel of a specific amount of damages sought by Plaintiff. (Defs.' Mem. at 34-35.) Plaintiff opposes, acknowledging that while courts tend to disfavor suggestions of a specific dollar amount, "there is no per se prohibition against the practice" in the Second Circuit. (Pl.'s Reply at 19-20.)

Defendants' motion is GRANTED. See Consorti v. Armstrong World Indus., Inc., 72 F.3d 1003, 1006 (2d Cir. 1995) ("A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a real potential to sway the jury unduly. While under the circumstances present here we do not yet reach the point of holding that it is error to permit such recommendations, it is not a desirable practice. We encourage trial judges to bar such recommendations."), vacated on other grounds, Consorti v. Owens-Corning Fiberglas Corp., 518 U.S. 1031 (1996); accord Mileski v. Long Island R.R. Co., 499 F.2d 1169, 1172-74 (2d Cir. 1974).

## III. CONCLUSION

For the foregoing reasons, Defendants' motion in limine is GRANTED IN PART and DENIED IN PART, and Plaintiff's motion in limine is GRANTED IN PART and DENIED IN PART.[13] Specifically, the court orders that:

- Mr. Signorelli may offer only certain opinions concerning general police practices and Defendants' compliance therewith, and cannot offer opinions that touch on ultimate legal issues, the credibility of witnesses, or motives. In addition, unless Plaintiff makes an adequate showing, Mr. Signorelli is precluded from testifying about opinions that were not included in his Rule 26 disclosure. See supra Part II.A.1.

- Dr. Pompa cannot testify as a Rule 26 expert witness, but, as a treating physician, can provide opinion testimony if Plaintiff is able to lay a proper foundation at trial and demonstrate Dr. Pompa's qualifications to provide such opinion testimony. See supra Part II.A.2.

- Certain testimony related to Shammas's disciplinary history is admissible, while other testimony and documentary evidence related to the disciplinary history is inadmissible. In addition, absent an adequate showing, Plaintiff cannot argue to the jury that Shammas's disciplinary history demonstrates his character for untruthfulness. See supra Part II.C.

---

[13] The parties have also raised an additional substantive dispute in a joint status report to the court, concerning whether reports created by Defendants shortly after the incident with Plaintiff are admissible as business records, or whether they are inadmissible hearsay. (See Jt. June 19, 2015, Ltr. at 2-3.) The court will resolve the objection at trial, when or before Defendants seek to offer the exhibits into evidence.

- Plaintiff may call Audra Stern and Irene Gross as witnesses. See supra Parts I.D.1 and II.D.2.

- Subject to any renewed objection by Defendants regarding the photographs taken by Thomas Krestos, Plaintiff may call Thomas Krestos as a witness. See supra Part II.D.3.

- Plaintiff may introduce as evidence the thirty-second video recording of the towing of his vehicle, and elicit testimony concerning the purported missing footage, but the court will not give an adverse inference instruction to the jury. See supra Part II.F.

- In connection with describing his pre-existing medical impairments, Plaintiff may introduce testimony that he volunteered and was injured following the September 11 attack. See supra Part II.G.

- Plaintiff's counsel is directed to refer to Defendants' counsel as "defense counsel" or "attorneys from the Corporation Counsel," and the court will also refer to Defendants' counsel in this manner. See supra Part II.H.

- Plaintiff is precluded from introducing any evidence related to the City's actual or potential indemnification of Defendants. See supra Part II.I.

- Plaintiff's counsel may not suggest to the jury a specific amount of damages that would be appropriate in this case. See supra Part II.J.

The court RESERVES JUDGMENT with respect to the following issues in limine, and will resolve them at the appropriate time before or during trial:

- The court will determine the admissibility of the NYPD materials that Plaintiff seeks to admit (in connection with Mr. Signorelli's expert testimony) upon reviewing them at trial, but is not convinced that the materials will be of probative value, and is concerned that they may mislead or confuse the jury. See supra Part II.B.

- Plaintiff may call Cameron Stern as a witness if he first lays a proper foundation for her testimony, and if the court concludes that she is competent to understand the oath and to testify. See supra Part II.D.1.

- Plaintiff may not introduce as evidence three black-and-white photographs (Plaintiff's proposed exhibits 35, 36, and 37) until the court has had an opportunity to review them and determine their probative value and potential to unfairly prejudice Defendants. See supra Part II.E.

The parties are DIRECTED to confer and to file within seven days of the date of entry of this Memorandum and Order a joint document with proposed redactions, if any, for a publicly filed version of this Memorandum and Order. If the parties are unable to agree on any proposed redactions, they shall note the disagreements in a cover letter. The cover letter and proposed redactions shall be filed under seal.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     July __, 2015

NICHOLAS G. GARAUFIS
United States District Judge